Estate of W. Nelson Stine.

8

Argued October 29, 1929.

Before
PORTER, P. J., TREXLER, KELLER, LINN, GAWTHROP, CUNNINGHAM and BALDRIGE, JJ.

*Harold Evans,* and with him *Roscoe R. Koch,* for appellant.—The evidence fails to support an oral contract of marriage: Stevenson's Estate, 272 Pa. 291; Hilton's Estate, 263 Pa. 16; Yardley's Estate, 75 Pa. 207; Bicking's Appeal, 2 Brewster 202; Craig's Estate, 273 Pa. 530; Murdock Estate, 92 Pa. Superior Ct. 275; Miller's Estate, 279 Pa. 30; Worrall's Appeal, 110 Pa. 349; Drinkhouse's Estate, 151 Pa. 294.

*M. M. Burke,* and with him *M. A. Kilker,* for appellee.—There was a valid contract of marriage: Miller's Estate, 34 Pa. Superior Ct. 385; Greenawalt v. McEnelley, 85 Pa. 352; Com. v. Haylow, 17 Pa. Superior Ct. 541; Comloy's Estate, 185 Pa. 208; Knecht v. Knecht, 261 Pa. 410; Thewlis' Estate, 217 Pa. 307.

OPINION BY TREXLER, J., January 29, 1930:
Jemima Atkins Stine, claiming to be the widow of

William Nelson Stine, who died in the year, 1928, petitioned the court for a rule upon Charles H. Stine, (decedent's son by a former wife) the administrator of his estate, to show cause why she should not be given her right of exemption and that the same might be appraised to her as provided by law. Charles H. Stine answered the petition by alleging that the petitioner had never been the lawful wife of the decedent.

It is admitted that the petitioner came to live with the decedent in the year 1903 and they were not then married. A child was born to her December 11, 1916, and the decedent was its father. The birth of the child caused a lot of gossip in the neighborhood and she testified that he stated to her, "We will settle all this, I will now take you as my wife until death parts us" and that the petitioner replied, "I now take you for my husband until death parts us." No witnesses were present at the time, but subsequently, sometime before September 29, 1918, Stine requested an ordained minister of the Independent Church of God to baptize the child and designated the following Sunday as the time for performing this solemn ceremony. At that time Stine told the minister that the petitioner was his wife. After the baptism was performed, the minister gave a certificate in which he certified the baptism of the son bearing the same name as the decedent and designated as the child of W. N. Stine and his wife, Jemima, and that certificate was retained in the home occupied by them. On another occasion Stine accosted Neidhammer, a school teacher, who was passing his barn and charged him with having circulated gossip around the neighborhood concerning his relations with the petitioner and then assured him that the petitioner was his wife and that he had papers to prove it. There is some discrepancy in the testimony which makes it uncertain as to whether this conversation occurred before the baptism or after it, but there is force in the

**10**

suggestion by the court that ten years having elapsed since then, there may be a slip of memory as to the time and that probably the paper referred to was the baptismal certificate.

Thereafter the petitioner affixed her married name to a note which W. N. Stine retained and before Stine's death, he declared to the minister who had baptised his son that he proposed to make a will in favor of his wife and Charles Stine, the respondent and son of a former wife, and W. Nelson Stine, the child born to the decedent and the petitioner. Stine never denied the marriage and the lower court pertinently remarks that on the three solemn occasions mentioned above, he vowed that the petitioner was his wife, namely (1) at the baptism of his son, (2) when he was defending the legitimacy of his son against public gossip, and (3) when he was lying on his death bed.

A number of witnesses who were called testified that Stine, since the year 1917, referred to the petitioner as his wife and introduced her as such or referred to her as the "Misses" and that they were well-known in the community in which they lived as husband and wife. They dwelt together for twenty-five years on a farm in the country. In the simple circle in which they lived, there was free discussion of each other's affairs and the conclusion may well be drawn that in the common opinion of the neighborhood, they sustained the relation of husband and wife. So far the case is clear of any doubt. The form of words employed by the parties when they entered into the agreement of marriage were such as constituted a legal marriage under the common law. Discussion of this branch of the case is unnecessary, for in Murdock's Estate, 92 Pa. Superior Ct. 275, our Brother KELLER has reviewed the rulings of the appellate courts in this state and the proposition is clearly supported by the cases there cited that marriage being a civil contract may be made

by words in the present tense without attending cere- monies, religious or civil. The words here employed were in the present tense uttered with the view and for the purpose of establishing the relation of husband and wife.

To offset the testimony of the petitioner, the respondent has produced witnesses who testified that the decedent stated the petitioner was not his wife, but his housekeeper; the explanation of this by one witness was that the decedent was a very peculiar man and "said that sarcastic." On several occasions the petitioner denied that she was married to the decedent and a witness stated that she said on the night of the decedent's death that she and her son were nothing to him because she was never married to decedent. Admissions of this character, which upon their face would appear to be very unlikely to have been made, should be received with caution: McCarty v. Scanlon, 187 Pa. 495.

The same witness said upon another occasion about two years before the death that the petitioner said she was not Mrs. Stine, but Mr. Stine's housekeeper, but the witness reluctantly admitted that the petitioner was sometimes known as Mrs. Stine and the comment of the court was that the witness appeared to be a busybody and a gossip and was not entitled to much credence. Another witness, the daughter of the respondent, testified that declarations were made by the petitioner after the death of her husband, that she had not been married to the decedent, but her subsequent acts however were not consistent with this declaration, for as the court comments, the witness had the appearance and poise of a woman well acquainted with social amenities and it is not probable that she would have consulted the petitioner in order to make funeral arrangements, arranged for a burial place which resulted in the selection of the petitioner's

choice and accompanied through the community and into the town of Ashland a woman whom she believed to be the mistress of her grandfather. The petitioner denied these admissions. It appears that the petitioner opened a bank account in her maiden name before her marriage and did not have it changed since, but there is no particular significance to this. If she had opened a new account in that name, that would be more important. All taxes were assessed in her maiden name. She evidently was indifferent as to this.

Three cousins of the decedent and the wife of one of the cousins testified that on the day of the funeral, one of these cousins introduced the petitioner to the other people as Mrs. Stine and she replied that she was not Mrs. Stine, but Mr. Stine's housekeeper. This, as the court indicates, does the most damage to the testimony against the petitioner, but she was in a perturbed state of mind at the time and she must have been aware of the old gossip that had prevailed and that these people were opposed to her and that she merely referred, probably by way of irony, to what she believed was their attitude toward her.

The lower court held that the testimony offered by the respondent was not sufficient to overweigh all the positive testimony establishing the marriage. The weight of the testimony is largely in favor of the conclusion that the marriage was contracted in the year 1917, and that the declarations of the husband and the conduct of the parties all strengthened the proof in this regard and that there is abundant confirmation in the baptism of his son and in his declarations to his neighbors.

The decree is affirmed, the appellant to pay the costs.