## McGrath's Estate.

310

Argued May 13, 1935. Before SIMPSON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

Order reversed and record remitted for correction.

*Theodore Lane Bean,* for appellant.

*Julian W. Barnard,* for appellee.

OPINION BY MR. JUSTICE LINN, June 29, 1935:

Pursuant to section 2a of the Act of June 7, 1917, P. L. 429, 20 P. S., section 11, appellant, as widow of Edward J. McGrath, applied for the $5,000 allowance to the widow of a decedent dying intestate and without issue. Next of kin denied the marriage. Evidence was taken, and, after argument, the petition was refused on the ground of insufficient evidence of marriage.

While there was no marriage by religious or civil ceremony, petitioner testified that she and the intestate, with intent to become married, had read together the marriage service from a ritual of the church of which appellant was a member. Her evidence clearly brought the transaction within the verba de præsenti rule. On

her testimony the learned hearing judge found: "We see no reason why we should discredit the testimony of the petitioner as to this ceremony in any detail. Certainly, if petitioner was fabricating the story of this ceremony, she would have to have an excellent imagination. Her testimony was direct and clear, and her manner of testifying, her appearance, the fact that it was unshaken on cross-examination and all the indicia that a fact finding tribunal lays hold upon to determine the credibility of a witness were considered by the court with the result that we unqualifiedly and unequivocally and without exception as to any detail, believe the testimony of the petitioner in regard to this transaction. According to petitioner's testimony, which we believe, there were words used in the present tense uttered with a view to establish the relation of husband and wife. . . . To repeat, that there may be no doubt, we believe fully the testimony of the petitioner both as to the making of and the terms of the oral contract of marriage, but we can not consider it as proving the oral contract of marriage in the absence of proof thereof by the testimony of at least two witnesses who were present when the contract was made, or unless her testimony concerning the making of the contract is corroborated as required by the fourth alternative method of proof, above indicated,[1] by cohabitation and reputation after the making thereof. It only remains therefore for us to inquire as to whether cohabitation and reputation was sufficiently proven subsequent to September 23, 1923, as required by the law, to corroborate the testimony of petitioner as to the making of the oral marriage contract on that date. That petitioner and decedent cohabited together, practically without interruption, from September 23, 1923, until the

---

[1] The learned trial judge discussed four methods of proof by which he considered a common-law marriage could be proved: (1) by written contract signed by both parties; (2) by witnesses to the ceremony; (3) by cohabitation and reputation; (4) by testimony of one of the parties, corroborated by cohabitation and reputation.

time of the decedent's death, is beyond any question of doubt. They lived together in the home of petitioner's mother in Pottstown, they lived together in various hotels when traveling, and, when decedent was not separated from petitioner by force of the pursuit of his business, they were scarcely ever apart a day or a night at a time." He also says: "In the first place, petitioner need feel no humiliation in the eyes of the public from her cohabitation with decedent for a number of years, nor should she have any fear of condemnation for what may now appear to have been a relation having a meretricious tinge. We are convinced that petitioner truly believed herself to be married to decedent on and after September 23, 1923, and, so believing, was justified in her cohabitation with him what she believed the lawful cohabitation of marriage. Again, from all the evidence, she was throughout a period almost ten years as devoted to the decedent as any lawful wife could possibly be. There was not the slightest intimation in any of the testimony or evidence to indicate that either decedent had any relations with any woman but petitioner or that petitioner had any relations whatever with any man but the decedent. In view of their admitted relations, it is most unfortunate that petitioner is unable to meet the measure of proof that would establish her as the lawful wife of the decedent, but courts in their conclusions must be bound by the evidence and the measure of proof required by the law, and nothing else. Our final conclusion both as to law and fact therefore is that although the import of the testimony of petitioner as to the marriage ceremony of September 23, 1923, is to the effect that petitioner and decedent used words in the present tense uttered with a view to establish the relation of husband and wife, and we believe her testimony as to this transaction, we can not take it as establishing the marriage contract without the corroborating circumstances of cohabitation and reputation. She has proven the cohabitation, but has failed to meet the measure of

proof required by law to establish reputation of the status of man and wife between her and the decedent, and therefore fails to establish the contract of marriage by this the only one of four methods available to her for the establishing of a marriage contract, and her petition must therefore be dismissed."

The ultimate fact to be proved was the marriage. As the law does not require a religious or a civil ceremony, the fact of marriage may be proved like other contracts, unless proof in a specified way or by a designated quantum is required by statute or rule. It is clear from the finding quoted above, that the fact of marriage, if provable as an ordinary contract, was proved to the complete satisfaction of the learned judge. The legal consequence of the fact follows as of course, whether declared by him or not. If he failed to attribute to the facts found the proper legal result, we must accept the facts (being supported by evidence) and apply the law. The question, then, is whether he was correct in his view, that what would be sufficient proof of a contract, was inadequate to prove marriage, because of some positive requirement that there must be more than one witness. We cannot agree with his understanding of the law. Having once found the fact of marriage, the ultimate fact which would determine whether petitioner was entitled to receive the benefit of the statute, the inquiry was ended; she had brought herself within the statute and was entitled to its benefit.

The learned judge seems to have been misled into the view that at least two witnesses were needed to prove marriage, by a literal application of a statement of a general rule concerning proof of contracts. In support of his view, he quoted from Craig's Est., 273 Pa. 530, 533, as follows: "Marriage is a civil contract and does not require a particular form of solemnization by church or state officials to make it valid; but as a contract it must be evidenced by words in the present tense uttered with a view to establish the relation of husband and

314

wife and should be proved by the signatures of the parties, if in writing, or by witnesses who were present when the contract was made: Com. v. Stump, 53 Pa. 132." He interpreted the words "by witnesses" as requiring more than one witness to prove a contract. The rule quoted, however, was not to be so understood. In Com. v. Stump, cited in the quotation, the rule was phrased somewhat differently, but clearly showing, as the words now italicized indicate, that the purpose was not to lay down a different rule for proof of marriage from that applying to contracts generally: "Marriage is in law a civil contract, and does not require any particular form of solemnization before officers of church or state, but it must be evidenced by words in the present tense, uttered with a view and for the purpose of establishing the relation of husband and wife, *and, like all other civil contracts,* should be proved either by the signature of the parties or by witnesses who were present when it was made" (at page 136). It cannot have been intended to imply, by the use of the plural "witnesses," that a parol contract may not be proved without the testimony of more than one witness to the transaction. It is true that misapprehension might have been avoided if the language had been "by a witness or witnesses who were present when it was made," which is what was meant. There has never been any doubt about the general rule, and it has never been understood to mean that proof of contract failed where there was but one witness. No case, decided since the removal of the disqualification of interest,[2] has been called to our attention which held that the evidence of the surviving spouse is not sufficient without a second witness also testifying to the fact;[3]

---

[2] Act of April 15, 1869, P. L. 30.

[3] Greenawalt v. McEnelley, 85 Pa. 352; Drinkhouse's Est., 151 Pa. 294, 24 A. 1083; Comly's Est., 185 Pa. 208, 213, 39 A. 890; Luce's Est., 3 Pa. Superior Ct. 289.

nor is there any doubt of the competency of a surviving spouse to testify where, as here, the claim is to take by devolution.[4]

It is settled in this State, that, if other proof is not available, "the marriage may be established," as was said in Craig's Est., supra, at page 533, "by proof of reputation and cohabitation, declarations and conduct of the parties and such other circumstances as usually accompany the marriage relation: Richard v. Brehm, 73 Pa. 140." This is another method, complete in itself, of proving marriage. If the proof under this rule is sufficient to convince the fact-finding judge that the parties were married, no other proof is needed, though the presumption of marriage that such evidence might raise must give way to the positive proof of the party that no contract was made: Murdock's Est., 92 Pa. Superior Ct. 275; Bisbing's Est., 266 Pa. 529, 531, 109 A. 670. If the fact of marriage has already been shown by other evidence sufficient for the purpose (as it was in this case, on appellant's testimony), resort to proof by habit and reputation is not necessary; it is mere cumulation. Now, in addition to the attempt to prove the fact by her own testimony, appellant also sought to prove it by evidence under this habit and reputation rule. The learned judge was unable to find the fact of marriage from the evidence of cohabitation and reputation, apparently because witnesses on one side contradicted those on the other. But, even if insufficient to establish the presumption of marriage by the second rule, the evidence had a place in the case, and is worthy of consideration, as corroborating appellant's account of what occurred, that is, of persuading the judge that she was telling the truth, for, as he finds, she would not, without marriage, have continued living and going about with decedent, as stated in the findings made.

[4] Act of May 23, 1887, P. L. 157, section 5, clause [e], 28 P. S., section 322.

During the period beginning shortly before the marriage and continuing to the time of decedent's death, he lived in Pottstown. "It appears to the court equally conclusive," the finding continues, "that his home was in Pottstown in the house of the mother of petitioner. Certain it is that the testimony shows that it was to this place that he always returned when his business did not require his presence elsewhere. When he applied for his license to drive a motor vehicle, or for the registration of his motor vehicle, he assigned his residence as this house which belonged to petitioner's mother, and for years in the records of the Highway Department his name appeared as a resident of Pennsylvania residing at the Pottstown home of the mother of the petitioner. Furthermore the attitude of all the witnesses from Pottstown indicated conclusively that they all regarded him as a Pottstown man. We find therefore as a fact that the residence of the decedent was Pottstown in the house of petitioner's mother at 44 East Fourth Street." In dealing with this phase of the case, it is desirable to refer to the decedent's occupation. The finding of fact is: "All his life he had been engaged in the training of trotting horses and in driving them upon the track, and was so engaged up to the time of his death. He owned, trained, and raced some horses, and in addition to training and racing his own horses, he trained and raced the horses of other owners. He apparently, from the testimony, was a well-known man in his profession, and traveled about all the tracks in Pennsylvania, Maryland, New York and the New England States."

His occupation required that he should travel about the country. Another finding is that "In the early summer of 1924, decedent, as was his custom, started off the racing season Down East, in Massachusetts, where the season starts earlier than in the Middle Atlantic States. He went through the season in that section returning every week-end to Pottstown. Then followed his participation in the racing season in and about Pennsylvania

and Maryland. This continued through the summer and fall, decedent attending and participating in the local fairs at Lancaster, York, Allentown, Reading, Pottsville, in Pennsylvania, and Hagerstown and Frederick in Maryland. Throughout this season petitioner accompanied him to the various tracks and stayed with him except when convenient to Pottstown when decedent would return to Pottstown week-ends which he spent with petitioner at their home with petitioner's mother. This continued until October, 1924, when decedent again went into winter headquarters in Reading." We understand that to be typical of his activities.

Witnesses in whose houses appellant and decedent lived as husband and wife, while the decedent pursued his occupation away from home, testified that they lived in that relation; decedent introduced appellant as his wife; hotel registers showing that they registered and occupied rooms in that relationship were put in evidence. In a general way, it may be said that this evidence described their lives "throughout a period [of] almost ten years," referred to in the opinion quoted above. All of this evidence, if believed, had its weight in producing belief of the evidence of the marriage contract given by the appellant. See Murdock's Est., 92 Pa. Superior Ct. 275, 277; Ward's Est., 296 Pa. 20, 145 A. 676; Brown v. Nolen, 298 Pa. 384, 148 A. 498; Krystkiewicz's Est., 310 Pa. 298, 165 A. 230; Henry's Est., 105 Pa. Superior Ct. 90, 160 A. 133. The mere fact that some witnesses were called who denied knowing that appellant and decedent were married, or that members of decedent's family (who did not live in or about Pottstown, Pennsylvania) refused to regard appellant and decedent as married, is material only as it might aid in persuading the judge to find the ultimate fact one way or the other. Cf. Stine's Est., 98 Pa. Superior Ct. 7, 12; Henry's Est., supra, 96. It may be, as suggested in appellant's brief, that members of decedent's family felt constrained to adhere to their view that, without a religious ceremony, such as

they believed to be necessary, decedent could not have been properly married to petitioner. Cf. Comly's Est., supra, at 211-12. But mere division of the evidence of reputation does not exclude it from consideration as corroborative of plaintiff's account, even though, had the marriage not been established by appellant herself, she would not have sustained the burden of proof of marriage by the habit and reputation rule: Greenawalt v. McEnelley, supra.

It is of course true, as was said in Stevenson's Est., 272 Pa. 291, 116 A. 162, that: "When it is attempted to establish marriage without the usual formalities, we should examine the professed contract with great scrutiny, and be entirely satisfied this solemn undertaking has been entered into by the voluntary assent of both parties" (at page 296); that ". . . when the lips of a man are sealed by death, and he leaves no satisfactory evidence as to the existence of such contract, courts will be very slow to establish it in derogation of the undoubted rights of those who follow him" (at page 301). See also, Krystkiewicz's Est., supra, at 300. The opinion filed by the learned hearing judge very clearly shows that he examined and considered the evidence in the light of the caution so expressed, and having done so, was constrained to make the findings of fact quoted; they are fully supported by the evidence, and must therefore be accepted in this court. But the legal effect of the findings entitled appellant to the benefit of the statute.

Order reversed, record remitted for correction in conformity with this opinion, costs to be paid out of the decedent's estate.