Myers *v.* Maurer & Myers, Appellants.

Argued March 5, 1941.

Before. KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, RHODES and HIRT, JJ.

*E. C. Marianelli,* for appellants.

*Harold Kaminsky,* for appellee.

Opinion by Stadtfeld, J., April 18, 1941:

This is a compensation case in which Mrs. V. Roger Myers claims compensation on account of the death of her husband, who she asserts, was an employee of the appellants at the time of his fatal accident, the happening of which was admitted. The appellants filed an answer alleging in substance that the claimant's husband was not an employee on the date of the fatal accident but was an independent contractor.

The referee who heard the case awarded compensation and subsequently the board affirmed the referee. On an appeal by the appellants, the Court of Common Pleas of Columbia County affirmed the award by an opinion of Kreisher, P. J., of the said court.

The points in controversy are whether or not the relationship existing between the claimant's deceased husband at the time of the fatal accident with Maurer & Myers, the appellants, was that of master and servant or that of an independent contractor.

Maurer & Myers have for some time been engaged exclusively as common carriers in the business of hauling automobiles and trucks. They had a permit by which they were allowed to haul automobiles and trucks from Buffalo, N. Y., to different cities located principally in the States of Pennsylvania and New Jersey. The transportation of said vehicles was carried on by large convoy trucks specially built to haul automobiles and could not be used for any other purpose. In the operation of this business they have twelve trucks which were owned by them as a firm, and in addition there were twenty-six convoy trucks owned by drivers who worked for them. All the trucks would leave from Bloomsburg, Pennsylvania, the home office of appellant firm, and drive to Buffalo, N. Y., where the company likewise maintains an office. Upon arrival in Buffalo, the drivers of convoy trucks, whether owned by the firm or by the drivers individually, reported to the company's office where the driver would receive from the man in

charge a freight bill which gave directions as to the delivery of the automobiles and designated the name of the consignee dealer, the address, the kind and the name of the automobiles or trucks to be transported and the charges for such transportation, etc. The automobiles and trucks to be transported were loaded on the convoy trucks and the driver then began the delivery to the consignees set forth in the said bills of lading.

Upon delivery of the automobiles and trucks at their destination as set forth in each bill of lading, the owner driver as well as the drivers who were admittedly the drivers of the appellants, occasionally collected from the consignee the charges made for the transportation of said vehicles and if a check was secured it would be payable to Maurer & Myers and then delivered to their office at Bloomsburg. The instructions would be placed on the bill of lading as to whether collection was to be made or whether they would be left to be billed by the appellant firm.

The owner drivers were paid a gross 77% of the freight rates charged to the consignee. The said amount represented the charge for the use of the truck and payment to the drivers for their services and the appellants retained the remaining 23%.

The drivers on the twelve convoy trucks owned by the firm received a fixed amount in accordance with the haul they made and the amount of cars they delivered and would be paid only if and when they were hauling cars. The directions received by the drivers of the firm owned trucks, as well as the owner drivers, were exactly the same. On each of the trucks there appeared the name of the appellant firm painted on the cabs of the truck. The arrangements which were made by the appellant firm with the drivers were not in writing but all arrangements were orally stated between all the drivers and the firm.

The deceased V. Roger Myers on June 8, 1937, was driving his own truck on the way to Buffalo on Route

15 in Tioga County, Pa., when an accident occurred and he was fatally injured.

The claimant's deceased husband became associated with the appellant's business on February 28, 1937, when he was hired to work as a "grease monkey" at the appellant's garage at Bloomsburg at a weekly salary of $16 which was later increased to $18 per week. The deceased continued to work in this particular job which was that of a garage attendant until May 15, 1937. On that date, the deceased purchased the automobile convoy and commenced hauling cars for the appellant firm. After May 16, 1937, instead of receiving a fixed salary he was paid for the use of the truck and for the services he rendered. The truck was purchased with the deceased's own funds. The evidence was disclosed that there were two helpers who assisted the deceased in the operation of his truck. One of these helpers was named Murray who claimed that he was employed by the deceased and received a total of $9 for his assistance, making five trips. The evidence showed that out of this $9, $8 was required to meet his expenses on the said trips which he had taken with the said deceased and the remaining $1 was his entire profit from being helper for the deceased.

The record also shows that James W. Sides, who was with the deceased on the fatal trip was likewise a helper on V. Roger Myers' truck but he testified that he had been hired by Marcus Myers of the defendant firm and acted as a helper for the deceased.

There appeared on the truck of the deceased, the firm name of "Maurer & Myers, Auto Convoys, Bloomsburg, Pa.—Buffalo, N. Y." In addition there was painted on the said truck the initials "D. P. S." with a number, 2748, representing a permit received by Maurer & Myers to operate the trucks through the City of Philadelphia.

From the history as set forth above, the referee, the board and the Court of Common Pleas of Columbia County sustained an award in favor of the claimant for

the reasons: 1. That the appellant firm as a means of limiting their investment in the automobile convoy business had their drivers purchase their own trucks; 2. Maurer & Myers the appellants, had the permit to haul automobiles and trucks; 3. They admitted that the drivers of the trucks owned by them were employees and that the instructions given to their drivers as well as to the owner drivers were identical; 4. Public liability insurance for any property damaged, as well as cargo insurance, was carried in the name of Maurer & Myers; 5. The duties of the deceased and those drivers who were admittedly employees were exactly alike; 6. The painting of the same lettering "No. 32 Maurer & Myers Auto Convoy, Bloomsburg, Pa.—Buffalo, N. Y. D. P. S. 2748" appeared on V. Roger Myers' truck.

Exceptions were filed by the appellants to the board's findings and these exceptions were dismissed by KREI-SHER, P. J. This appeal followed.

The board is a fact-finding body and its findings are as conclusive as the verdict of a jury if supported by competent evidence, and the revisory powers of the court are limited to such consideration of the record as to ascertain whether there is sufficient and competent evidence to support the findings of the board and that the law has been properly applied.

Maurer & Myers had a right to haul automobiles and trucks by a permit from the Interstate Commerce Commission. The Interstate Commerce Commission as well as the Public Utility Commission of Pennsylvania have respective authority as to the regulation of companies engaged in a business which can be designated as a public carrier. They set up certain rules, conditions and regulations in regard to businesses which come under their jurisdiction.

The Maurer & Myers firm was engaged in hauling vehicles, a type of business which is subject to regulation. Therefore, in order to hold themselves out as a public conveyance, they are required to secure a permit

from either of the Commissions. Anyone failing to secure such a permit and engaging in business would violate the law and be subject to a serious penalty.

The decedent could not have hauled vehicles in his own name as he would be violating the law. He could only drive and use his equipment for a company which had a lawful permit. The driver could only haul such equipment as he was allowed by the permit of the company. The Commission has set up certain rules in regard to the operation of the company's trucks and the drivers are subject to those regulations. The permit issued by the Interstate Commerce Commission covered every use of the trucks operated by Maurer & Myers and covered both the trucks owned by them as well as the trucks owned by the drivers.

The business of the defendant company was exclusively the hauling of automobiles and convoy trucks. They had no other business except the transporting of cars and trucks from a central station to cities in the eastern states of the United States. The business developed from a mere one truck proposition to a large venture. They had a solicitor to secure business for them and likewise a representative of the company maintained a station in Buffalo, New York, where the automobiles were dispatched. In addition to these employees, they maintained an office force to keep the records of their business and also had a garage in Bloomsburg where they serviced the trucks and stored them when they were not in use.

As their business increased, they were in need of additional trucks. As they did not desire to make any further financial investment, they formulated the idea of having their drivers purchase their own trucks. The type of work that the owner-driver performed was no different from that of the drivers who operated the company owned trucks. It was a convenience to the company and at the same time they would not be re-

quired to invest additional money in financing the operation of their company.

The facts of the case lead to the conclusion that the relationship between Maurer & Myers and the decedent, was not that of a contractor and contractee, but that of master and servant. See *Flaharty v. Trout,* 290 Pa. 315, 138 A. 863, from which we quote as follows: "It is not always easy to determine whether a party sustains toward another the relation of a servant or of an independent contractor. The rule as to the latter is stated by Mr. Justice SCHAFFER, speaking for the court, in *Simonton v. Morton,* 275 Pa. 562, 568: 'Where a contract is let for work to be done by another in which the contractee reserves no control over the means of its accomplishment, but merely as to the result, the employment is an independent one establishing the relation of a contractee and contractor and not that of master and servant.' An important element in such case is the right to hire and discharge help, here retained by the defendant should it be necessary. Because of this and the fact that defendant retained the right to determine when and what kind of logs were to be delivered and to end the contract at will, we are not prepared to hold the record devoid of evidence to support the finding of the relation of master and servant." See also *Burns et al. v. Elliott-Lewis Elec. Co.,* 118 Pa. Superior Ct. 243, 179 A. 47.

In the case of *Bucher v. American Fruit Growers' Co.,* 107 Pa. Superior Ct. 399, 163 A. 33, the defendant was the owner of an apple orchard. The claimant entered into a contract to haul barreled apples in his truck from the defendant's farm to the railroad station. Furthermore, the claimant sometimes assisted in "running apples" in the barrels at the defendant's packing house. He was paid $15 a day for himself and the use of the truck. He was injured and one of the questions involved was whether or not the relationship existing between the defendant and the claimant was that of

an independent contractor and the court held in that case that he was an employee and not an independent contractor.

In that case, the claimant was paid for the use of his truck as well as for his services which is similar to the case at bar. Instructions received by the claimant in the cited case were practically the same in respect to the duties he was to perform as that of the decedent in the case at bar.

Neither the compensation authorities nor the courts should be solicitous to put claimants in the position of independent contractors when a reasonable view of the evidence warrants a finding that the injured person was an employee: *Gailey v. State Workmen's Ins. Fund,* 286 Pa. 311, 133 A. 498.

The principle governing in cases of this character is discussed in *McCall v. Bell Telephone Co.,* 79 Pa. Superior Ct. 505, 507, as follows: "The character of employment of plaintiff has been found by the referee to be that of an employee, and there is ample evidence in the record to sustain the finding. Plaintiff had no contract for the doing of any definite or specific work but his was merely an engagement to do any and all work which required the use of teams and this under the direction of, and at times with the assistance of, defendant's foreman. It is not a case of letting out work to another without retaining any control over the work, except as to results accomplished, but rather a case of service rendered in the course of an occupation supervised and directed as to means and manners of performance. Defendant's foreman had full control over the extent, character and manner of service rendered by plaintiff. The fact that plaintiff was not carried on defendant's payroll is without significance. What he drew each week was wages and compensation for the use of his teams and not payments on account of a contract price. It is manifest that the relation of plaintiff to defendant was that of employee and not

independent contractor. This conclusion is in harmony with the decision in *Smith v. State Workmen's Insurance Fund*, 262 Pa. 286, and *Kelley v. Del. Lacka. & W. R. R. Co.* 270 Pa. 426, wherein is laid down the legal principle which solves the inquiry as to whether one is an employee or an independent contractor."

We quote from the opinion of the court below: "By painting the same lettering: 'No. 32 Maurer & Myers Auto Convoy Bloomsburg, Pa.—Buffalo, N. Y. D. P. S. 2748' on V. Roger Myers' truck, carrying liability and property damage insurance, rendering the same kind of exclusive service to the defendants and on the same basis as the drivers of the defendants, except as to compensation, the right to terminate employment, the employment of James Sides as a helper by defendants, the distribution of service at Buffalo, the following of the same routine, the exercising of the same degree of control over the drivers, either their own or truck owners, the advancement of cash, oil and gas before leaving, when all taken together we believe is sufficient legally competent evidence to sustain the findings of fact and conclusions of law by the Referee, and to apply the provisions of the Act of June 1915, P. L. 736."

After a careful examination of the entire record, we have come to the same conclusion.

The assignments of error are overruled and judgment affirmed.