## Kilduff v. American Cyanamid & Chemical Corporation

*Robert L. Wallace*, for claimant.
*Matthews & Matheny*, for defendant.

BRAHAM, P. J., November 17, 1943.—This is one of three appeals taken from the action of the Workmen's Compensation Board with reference to compensation for the death of Elmer T. Kilduff. It is necessary to understand clearly the factual and procedural situations.

On November 12, 1940, while he was working for defendant, Elmer T. Kilduff was instantly killed by an explosion. On September 22, 1941, his parents, James W. Kilduff and Hattie E. Kilduff, filed a claim petition alleging their partial dependency upon their son. Defendant denied any dependency. Before the case was heard, to wit, on January 19, 1942, Florence L. Kilduff filed with the board a petition to intervene and to be allowed to file an amended claim petition claiming compensation for herself as the widow of the deceased by virtue of a common-law marriage. Her claim was resisted both by the parents and by defendant, on the grounds that there had been no common-law marriage and the alleged widow had filed her claim too late.

Ultimately the claims of the parents and of the alleged widow were consolidated for hearing, and on December 17, 1942, the referee filed an order finding the parents to be partially dependent upon the deceased, but disallowing the claim of the parents because there was a surviving widow; and finding Florence L. Kilduff to have been a common-law wife but disallowing her claim because her claim was filed more than one year after the date of death.

The Workmen's Compensation Board, upon appeal to it, sustained all the findings of fact of the referee, including the finding of a common-law marriage status between Elmer T. and Florence L. Kilduff; but held that the claim of Florence L. Kilduff was filed in time, because of the previous and timely filing of a claim by the parents, and awarded the alleged widow compensation. It is the appeal of defendant from this award which is now before us.

Were Elmer T. and Florence E. Kilduff husband and wife at the time of his death? This is the decisive question in the case. Both the referee and the board have found that she was his common-law wife. Ordinarily when the referee has found facts which are affirmed by the board and there is substantial evidence to support the findings, they will not be disturbed upon appeal to the common pleas: Tomshuck v. Wallin Concrete Corp. et al., 146 Pa. Superior Ct. 390; Myers v. Maurer & Myers, 144 Pa. Superior Ct. 385; Sharpe v. Federal Window & Office Cleaning Co. et al., 144 Pa. Superior Ct. 231; Russell v. Scott Paper Co. et al., 140 Pa. Superior Ct. 84. The above are all the cases cited by claimant on the point; but the findings therein referred to relate to such matters as the manner and extent of injury and the amount of compensation. The law is clear that the board's findings of fact as to such matters are conclusive. But whether a common-law marriage took place is a mixed question of law and fact. On this point President Judge Keller of the Superior Court said in Baker v. Mitchell et al., 143 Pa. Superior Ct. 50, 55, as follows:

"An administrative tribunal is none the less subject to the established law of the Commonwealth. The board cannot be permitted to find a common law marriage in circumstances where a judge of the orphans' court would not be allowed to find it or where the verdict of a jury finding such a marriage would be reversed.

"Besides, whether one person has been *legally* married to another is not a pure question of fact. It is a mixed question of fact and law. Even after a fact finding body has found certain basic facts, it is still the duty of the courts to determine, as a matter of law, whether the findings are supported by substantial evidence, and whether they supply all the legal requirements for a valid marriage. For example, if either of the parties were already married when the alleged marriage took place, a finding even of a ceremonial wedding would not make it a valid marriage."

See also on the point Balanti v. Stineman Coal & Coke Co. et al., 131 Pa. Superior Ct. 344.

We proceed therefore to examine the evidence to determine whether it sustains the finding of a common-law marriage. Claimant testified in chief only as to her living with Kilduff following the gift of a ring and being introduced by him and known by the neighbors as his wife. Upon examination by the referee she gave this account of the occurrences at the time she says she became Mrs. Kilduff:

"Q. When did he give you the ring then?

A. On the 3rd day of July, 1933.

Q. Did he give it to you before breakfast or after dinner—

A. Oh, he gave it to me in the afternoon.

Q. In the afternoon?

A. Uh huh.

Q. At the time he gave it to you, what were the circumstances?

A. Well—what do you mean by that? Was he working or—

Q. Yes—Were you out walking or were you in the living room or church or where?

A. No, we went for a ride that afternoon and he gave it to me.

Q. It was while on this ride he gave it to you?

A. Yes.

Q. Had you seen it before?

A. No, I didn't.

Q. What did he say when he gave the ring to you?

A. Well, I don't really remember, it's been so long ago, what he did say that day. I can't tell you now.

Q. Could we say at any particular hour of that day that then you were Mrs. Kilduff?

A. Well, after he gave me the ring, I just took it; I was Mrs. Kilduff.

Q. You just considered it after that?

A. Uh huh.

Q. And did you say anything or did he say anything at that particular time?

A. I don't remember.

Q. You just know when you came back from the ride, you were Mrs. Kilduff?

A. That I was Mrs. Kilduff.

Q. You had a ring. (That's all.)"

The general law as to common-law marriages is well established:

"Marriage is a civil contract and does not require a particular form of solemnization by church or state officials to make it valid; but as a contract it must be evidenced by words in the present tense uttered with a view to establish the relation of husband and wife and should be proved by the signatures of the parties, if in writing, or by witnesses who were present when the contract was made: Com. v. Stump, 53 Pa. 132. But if such evidence is not available, the marriage may be established by proof of reputation and cohabitation, declarations and conduct of the parties and such other circumstances as usually accompany the marriage relation: Richard v. Brehm, 73 Pa. 140. Neither cohabitation nor reputation alone is sufficient, however. Both must co-exist when there is no proof of actual marriage and together they are evidence from which a presump-

tion of marriage arises, which presumption is always open to rebuttal by proof that no marriage had, in fact, taken place: Richard v. Brehm, supra; Com. v. Haylow, 17 Pa. Superior Ct. 541": Craig's Estate, 273 Pa. 530, 533.

Proof of a common-law marriage by evidence of cohabitation and reputation alone is sufficient in some cases. It is referred to in McGrath's Estate, 319 Pa. 309, 315, as "another method, complete in itself, of proving marriage". The claim of Florence L. Kilduff is based upon this method; she asks us to disregard her vague and evasive testimony as to the beginning of the relationship and to rely solely upon her evidence of cohabitation and reputation, which is admittedly good. But evidence of this type is only presumptive and the presumption of marriage arising from uninterrupted cohabitation and general reputation of marriage falls before proof that no marriage has taken place: Balanti v. Stineman Coal & Coke Co. et al., supra, at page 347; Pegee v. Ricchini et al., 140 Pa. Superior Ct. 56; McGrath's Estate, supra.

Claimant relies upon Elmer Kilduff's giving her a ring. Caddy v. Johnstown Firemen's Relief Assn., 129 Pa. Superior Ct. 493, is an interesting case in which an attempt to be married by a legal ceremony had been frustrated by an automobile accident. The parties discussed the matter and in words of the present tense agreed to be married. A ring was placed upon the woman's finger. Her claim was successful but President Judge Keller of the Superior Court summarized the law on the point in this fashion (p. 495):

"Cohabitation and reputation that the parties are married do not constitute a legal marriage—not even a common-law marriage—, but they are evidence from which a marriage may be found, if the circumstances are sufficiently strong and convincing to satisfy the triers of fact. If, however, the alleged widow is not

satisfied to rest her case on reputation and cohabitation and attempts to prove the marriage by evidence of what occurred at the time of the alleged contract of marriage, and the evidence establishes that no marriage took place, the presumption arising from reputation and cohabitation, no matter how strong, must give way to the positive proof that no contract was made: *Bisbing's Est.*, 266 Pa. 529, 109 A. 670; *Edwards v. Enterprise Mfg. Co.*, 283 Pa. 420, 129 A. 449; *McDevitt's Est.*, 280 Pa. 50, 124 A. 294".

Is the result different because claimant testified merely that she was unable to remember what was said at the time she was given the ring? We apprehend not. To allow such a thing would be dangerous. President Judge Keller, who has written many valuable opinions on the subject, said in Baker v. Mitchell et al., 143 Pa. Superior Ct. 50, 54, 55:

"The law of Pennsylvania *recognizes* common law marriages. But they are a fruitful source of perjury and fraud, and, in consequence, they are to be *tolerated, not encouraged;* the professed contract should be examined with great scrutiny, and it should plainly appear that there was an actual agreement entered into, then and there, to form the legal relation of husband and wife: *Stevenson's Est.*, supra [272 Pa. 291], pp. 296 and 301. . . .

"Furthermore, there is widespread confusion among laymen generally, and to some extent among laymen in administrative boards and positions, as to what a common law marriage is. Influenced, perhaps, by the newspaper custom of referring to a man's mistress or paramour as his 'common law wife', there is a general tendency to regard every case of a man and woman living together, without a ceremony of marriage performed by a church or state official, as a common law marriage, irrespective of whether the relation is lawful or illicit. This is a mistake. A common law mar-

riage implies that both parties are able and willing to marry and that they solemnly enter into a contract of marriage, in words of the present tense, for the purpose of establishing the immediate relation of husband and wife. If any of these essential requirements is lacking, the relation is illicit and meretricious and not a valid common law marriage."

The law recognizes the possibility not only of common-law wives but also of mistresses. If the rule contended for by claimant were tolerated the mistress desiring to show herself a common-law wife would need only to show cohabitation and reputation and forget how the thing began. The giving of a ring may be used to cover up an illicit relationship as well as to bind a lawful one.

The decisive feature of claimant's case is her failure to show a contract. It is idle for her to say she does not remember. Entrance into marriage is one of the landmarks in every life; the incidents of courtship and marriage are never forgotten. Her evidence of cohabitation and reputation is worthless in the face of her own testimony which establishes the lack of a contract: McDevitt's Estate, 280 Pa. 50, 51. In Nikitka's Estate, 346 Pa. 63, the court found evidence of cohabitation but only defective evidence of reputation and rejected the claim of a common-law marriage. The court, however, did comment on the failure of the claimant to testify, indicating that a common-law marriage cannot be made out by a failure to testify or by hiding behind a lapse of memory. Claimant says that after the ride when she was given the ring she considered herself Mrs. Kilduff. She did not say so then, neither did her alleged husband and, as to his thoughts, we are in the dark. There were no words at all, to say nothing of words in the present tense.

Lest it be said we have decided this case upon exclusively technical grounds, we have carefully reviewed

all the evidence to determine whether claimant does present an apparently flawless case except for her failure to remember and find instead many suspicious circumstances.

In the first place, claimant's failure to present her claim for more than a year after the death and for more than four months after the parents had presented their claim does not indicate she thought of herself as a widow. During this time she was known as Miss Wagner and bought a car in that name. Furthermore, while she was living with the deceased in the home of his parents she never mentioned to them her marriage, never showed her ring, and never represented herself to them as a wife nor was so introduced by them. She was very uncertain as to the date of marriage. This is claimant's own testimony. Margaret L. Beight, an apparently disinterested witness, said that the deceased had confessed to her and her husband that "he and Florence were not married" and said he would never marry her. The mother of deceased testified that she had advised Elmer and Florence to get married.

Claimant's case fails because she was not able to show a contract of marriage. The evidence last recited merely corroborated the finding of no contract and therefore no marriage.

Since claimant, Florence L. Kilduff, was not a common-law wife it is unnecessary for us to decide whether she filed her complaint within the time allowed by law. This feature is apparently ruled by Sweeney v. Reading Co., 146 Pa. Superior Ct. 539, although if the matter were one of first impression we would incline to the view that, under The Workmen's Compensation Act of June 2, 1915, P. L. 736, as last amended by The Pennsylvania Workmen's Compensation Act of June 21, 1939, P. L. 520, 77 PS §602, the requirement of the statute that a claim be filed by "one of the parties" was satisfied by a filing by the parents.

Entertaining these views we make the following

*Order*

Now, November 17, 1943, the first, second, third, fourth, and fifth exceptions of defendant are sustained, the decision of the Workmen's Compensation Board awarding compensation to Florence L. Kilduff as the widow of the deceased, Elmer T. Kilduff, is reversed, and judgment is here entered for defendant.