**Miriam ATKINS**

v.

**Margaret M. HECKLER, Secretary of Health and Human Services.**

**Civ. A. No. 83–0564.**

United States District Court,
E.D. Pennsylvania.

Nov. 21, 1983.

---

Barry S. Yaches, Costigan, Baran & Garber, Philadelphia, Pa., for plaintiff.

Edward T. Ellis, Asst. U.S. Atty., Philadelphia, Pa., for defendant.

## OPINION

LUONGO, Chief Judge.

This case is before me on cross-motions for summary judgment filed pursuant to Section 205(g) of the Social Security Act, 42 U.S.C.A. § 405(g). Plaintiff appeals from the decision of the Administrative Law Judge (ALJ) which denied her application for widow's benefits because the ALJ found no common-law marriage had existed under Pennsylvania law between plaintiff and the deceased wage earner, Joseph Murray. The issue before me in this case, as in other Social Security cases, is whether the Secretary's decision is supported by substantial evidence.[1] *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Because the ALJ used an incorrect standard to determine whether a common-law marriage existed under Pennsylvania law, I will remand this case for further consideration and I do not reach the substantial evidence issue.

Plaintiff, Miriam Atkins first met the deceased, Joseph Murray, in 1958 or 1959. Mr. Murray had been a widower for two or three years at that time. The plaintiff began living with Murray in 1960. They were never ceremonially married because, according to plaintiff, they wished to protect the feelings of the Murray children who would have resented plaintiff's taking their mother's place. They planned to have a ceremonial marriage when all the children had left home. While plaintiff spent most of the next twenty years with Murray in his home on Tampa Street, Philadelphia, for a significant portion of that time, she also maintained her own apartment. Plaintiff testified that about five years before his death, Murray gave her a wedding ring and said "I consider you to be my wife" to which plaintiff responded that she considered Murray to be her husband. Murray died in December 1980 without having undergone a ceremonial marriage with plaintiff. Plaintiff applied for widow's benefits on Murray's Social Security account in April 1981. The ALJ denied plaintiff's application in August 1982 because he found that no common-law marriage existed between plaintiff and Murray.

Plaintiff would be entitled to widow's benefits if the courts of the state in which the insured, Mr. Murray, was domiciled would have found that the applicant and the insured were validly married at the time of the insured's death. 42 U.S.C.A. §§ 402(e), 416(h)(1)(A). The Commonwealth of Pennsylvania, in which Mr. Murray was domiciled, recognizes common-law marriage between individuals competent to marry.

"Under the law of this Commonwealth, marriage is a civil contract. The contract does not require any specific form of words, and all that is essential is proof of an agreement to enter into the legal relationship at the present time." *Estate of Gavula,* 490 Pa. 535, 417 A.2d 168, 171 (1980). The basic question Pennsylvania courts examine is whether the parties entered into a contract of marriage. *McGrath's Estate,* 319 Pa. 309, 179 A. 599 (1935). A plaintiff may prove the existence of such a contract in a variety of ways: by producing a written contract signed by both parties; or by the testimony of wit-

---

**1.** Substantial evidence is "such relevant evidence as a reasoning mind might accept as adequate to support a conclusion." *Cotter v. Harris,* 642 F.2d 700, 704 (3d Cir.1981).

nesses to the "ceremony"; or by sufficient proof of cohabitation and reputation of marriage so that a rebuttable presumption of marriage arises. *McGrath's Estate* at 311, 179 A. 599. The ALJ misconstrued Pennsylvania law by requiring the plaintiff to prove a combination of present tense agreement to become man and wife plus cohabitation and reputation, stating that "[u]nder the law of the Commonwealth of Pennsylvania, the three elements that must be proved in order to show a common-law marriage are an agreement to become husband and wife, cohabitation as husband and wife, and a holding out by the parties publicly that they are husband and wife." Decision of the ALJ at 3.

In this case plaintiff presented evidence of cohabitation and reputation in the form of doctor bills in the name of Miriam Murray and travel reservations in the names of Mr. and Mrs. Murray, the testimony of a neighbor, and a letter from one of plaintiff's relatives. In light of other evidence in the record, the ALJ held this evidence inadequate to support a finding of reputation as husband and wife and held there was no common-law marriage on that basis. Plaintiff also testified, however, that Murray gave her a wedding ring saying that he considered her his wife and that she responded in kind. If the ALJ were to find this evidence credible and find further that it showed the intent of the parties to be married at the present time, that alone would be sufficient evidence that a common-law marriage existed between plaintiff and Murray. Unfortunately, the ALJ did not make a specific finding on this issue.

In *McGrath's Estate, supra,* the Court held that the testimony of the surviving spouse to an agreement to be married at the present time, if credited by the factfinder, was sufficient evidence that a common-law marriage existed. *Id.* at 314, 179 A. 599. The spouse in *McGrath* testified to the "ceremony" she and the deceased had performed. She also presented evidence of

cohabitation and reputation which the lower court had found insufficient to raise a presumption of marriage. The Pennsylvania Supreme Court held that such evidence had a place in the case however, *i.e.,* it could corroborate the spouse's account of what had occurred and the factfinder could consider that evidence in determining whether the evidence of the marital agreement was credible. *Id.* at 315, 179 A. 599. It is within this context that the ALJ should have evaluated plaintiff's evidence of cohabitation and reputation. I will remand this case to the Secretary so that the requisite evaluation can be made as to the "ceremony" and the intent of the parties.

I must also express my concern about the state of the record in this case. The transcript of the hearing held by the ALJ is replete with "Inaudible" annotations, several indicating that the missing portions lasted for over a minute. It is possible that entire questions and answers were lost. Had I been required to resolve the substantial evidence question based on this transcript, I would have found it difficult, if not impossible, to do so. I have grave doubts that the ALJ will be able to resolve the issues on remand by reference to this transcript and a new hearing may be required.

It is the Secretary's obligation to provide an adequate record so that this court may make a meaningful review of the evidence supporting the Secretary's decision. The Secretary has failed to fulfill that obligation in this case.