Baker, Appellant, v. Mitchell et al.

Argued October 28, 1940.

Before KELLER, P. J., CUNNINGHAM,

Baldrige, Stadtfeld, Parker, Rhodes and Hirt, JJ.

*Bernard Jubelirer,* with him *Samuel H. Jubelirer* for appellant.

*Francis A. Dunn,* for appellees.

Opinion by Keller, P. J., January 30, 1941:

John J. Baker, an employee of the defendant, W. E. Mitchell, was accidentally killed on Wednesday, September 15, 1937, while in the course of said employment. A claim for compensation because of his death was filed on October 22, 1937, by the appellant claiming to be his dependent wife. On December 11, 1937, she gave birth to a daughter. The referee and the board awarded compensation for claimant and her child. On appeal, the court of common pleas reversed and set aside the award. Claimant appealed to this court.

The claimant relied upon an alleged common law marriage, which she said was entered into between them about the middle of February 1937, while they were riding in an automobile up to the Horseshoe Curve. Disregarding the *conclusions* which the claimant attempted to draw from the conversation between them on that occasion and confining ourselves to the words themselves, the alleged contract of marriage was based on the following: "Well, he asked me if I would be-

come his wife and I said I would." She then went on, "Then we agreed[1] to be man and wife......that he would become my husband and I would become his wife." Her subsequent testimony on cross-examination negatived a present and immediate marriage, and showed that a marriage was intended in the future.

At the time this occurred Baker was boarding and lodging with her parents, and she was residing with them as a member of their family. They did not tell her parents of the alleged agreement but kept it secret, because, she said, he didn't have steady work or anything to go to housekeeping, and they just "kept on" staying at her parents' home, as before. She testified that they did not have marital intercourse until sometime in March. If they occupied a room together there, it must have been done by stealth, for her parents were not aware of it. It was developed on cross-examination that they intended to have a marriage ceremony performed; in fact, that they had arranged to go to Cumberland, Maryland, and be married there on September 19th, the Saturday after his death. See *Grimm's Est.*, 131 Pa. 199, 202, 18 A. 1061. He knew that she was then pregnant.

Her claim must stand or fall on the language of the alleged agreement of common law marriage, for the evidence of reputation and cohabitation is wholly insufficient to justify a presumption of marriage. They purposely kept the alleged marriage secret and "kept on" staying at her parents' home, which can only mean, he as a boarder, she as a member of their family—not living together as husband and wife. Mere surmises by others as to the relationship, if any, between them is not enough.

We said in *Murdock's Est.*, 92 Pa. Superior Ct. 275:

---

[1] Another conclusion, rather than a statement of just what occurred.

"The claimant testified to the precise form of the contract of marriage between her and the decedent and by this she must stand or fall. If the alleged conversation constitutes a contract of marriage, evidence of cohabitation and reputation is received in corroboration of her testimony that a marriage contract was in fact entered into. But if she herself proves that no valid marriage was actually entered into between them, the evidence as to cohabitation and reputation goes for nothing: *Tholey's Appeal,* 93 Pa. 36, 38; *Grimm's Est.,* 131 Pa. 199, 202, [18 A. 1061]."

And the Supreme Court in *Bisbing's Est.,* 266 Pa. 529, 531, re-affirming *Hunt's Appeal,* 86 Pa. 294, 297, said: "Cohabitation and reputation are not marriage; they are but circumstances from which a marriage may be presumed, but such presumption may always be rebutted and will wholly disappear in the face of proof that no marriage in fact had taken place."

"Marriage is a civil contract and does not require a particular form of solemnization by church or state officials to make it valid; but as a contract it must be evidenced by words in the present tense uttered with a view to establish the relation of husband and wife and should be proved by the signature of the parties, if in writing, or by witnesses who were present when the contract was made: *Com. v. Stump,* 53 Pa. 132. But if such evidence is not available, the marriage may be established by proof of reputation and cohabitation, declarations and conduct of the parties and such other circumstances as usually accompany the marriage relation": *Craig's Est.,* 273 Pa. 530, 533, 117 A. 221. Hence it is not necessary that the marriage be proved by two witnesses: *McGrath's Est.,* 319 Pa. 309, 313, 179 A. 599.

But a common law marriage, where evidence of reputation and cohabitation is insufficient to support a presumption of marriage, must be evidenced by words in

the *present tense,* uttered with a view and for the purpose of establishing the relation of husband and wife. *Murdock's Est.,* supra, *Fitzpatrick v. Miller,* 129 Pa. Superior Ct. 324, 196 A. 83. Words in the future tense, that is, agreeing to enter into the marriage relation sometime in the future, even if followed by cohabitation are not sufficient in this State to establish a common law marriage. We discussed the matter at some length in *Murdock's Est.,* supra, pp. 278-285. Judged by that standard, the evidence in this case was insufficient to support a finding of a valid common law marriage. The words used did not differ from those usually employed when a man asks a woman to marry him and she consents to do so. They did not import an immediate, present marriage but a promise to marry in the future; and it makes no difference, so far as a legal *marriage* is concerned, that relying on this promise and with it in expectation they had intercourse together. That did not constitute them husband and wife: *Grimm's Est.,* supra; *Craig's Est.,* supra; *Stevenson's Est.,* 272 Pa. 291, 116 A. 162; *McDevitt's Est.,* 280 Pa. 50, 124 A. 294. It only rendered it more incumbent on them to carry their future intention into effect. The words used in this case are less expressive of a present, immediate marriage than the language employed in *Com. v. Stump,* supra; *Murdock's Est.,* supra, and cases cited therein. See also, *Com. v. Phillips,* 83 Pa. Superior Ct. 213, 215; *Stevenson's Est.,* supra, pp. 294-5; *Tholey's App.,* supra, p. 38.

The law of Pennsylvania *recognizes* common law marriages. But they are a fruitful source of perjury and fraud, and, in consequence, they are to be *tolerated, not encouraged;* the professed contract should be examined with great scrutiny, and it should plainly appear that there was an actual agreement entered into, then and there, to form the legal relation of husband and wife: *Stevenson's Est.,* supra, pp. 296 and 301.

We recognize that under the Workmen's Compensation Law the Workmen's Compensation Board is the fact finding tribunal and that its findings of *fact* when supported by *substantial* evidence (See *National Labor Relations Board v. Columbian Enameling & Stamping Co.*, 306 U. S. 292; *Wilbert v. Com. of Penna. & Pecora Paint Co.*, 143 Pa. Superior Ct. 37, 17 A. 2d 732, are conclusive on the courts; but this does not require the courts to sustain the board in finding that a common law marriage took place when the agreement to marry was in words of the future tense and imported only a promise to marry in the future. An administrative tribunal is none the less subject to the established law of the Commonwealth. The board cannot be permitted to find a common law marriage in circumstances where a judge of the orphans' court would not be allowed to find it or where the verdict of a jury finding such a marriage would be reversed.

Besides, whether one person has been *legally* married to another is not a pure question of fact. It is a mixed question of fact and law. Even after a fact finding body has found certain basic facts, it is still the duty of the courts to determine, as a matter of law, whether the findings are supported by substantial evidence, and whether they supply all the legal requirements for a valid marriage. For example, if either of the parties were already married when the alleged marriage took place, a finding even of a ceremonial wedding would not make it a valid marriage.

Furthermore, there is widespread confusion among laymen generally, and to some extent among laymen in administrative boards and positions, as to what a common law marriage is. Influenced, perhaps, by the newspaper custom of referring to a man's mistress or paramour as his "common law wife", there is a general tendency to regard every case of a man and woman living together, without a ceremony of marriage performed

by a church or state official, as a common law marriage, irrespective of whether the relation is lawful or illicit. This is a mistake. A common law marriage implies that both parties are able and willing to marry and that they solemnly enter into a contract of marriage, in words of the present tense, for the purpose of establishing the immediate relation of husband and wife. If any of these essential requirements is lacking, the relation is illicit and meretricious and not a valid common law marriage.

A review of the entire record satisfies us that the opinion of the court below, with which we are in full accord, and which recites the evidence at much more length than in this opinion, fully warranted its judgment reversing the findings and order of the Workmen's Compensation Board and setting aside the award in the appellant's favor, for want of substantial, competent evidence of a valid common law marriage under the well-established law of this Commonwealth to support it.

Judgment affirmed.