Albert H. Buschmann, J.
The plaintiff, a noncommissioned officer in the United States Army, seeks a declaration as to his marital status with the defendant.
The basis of the action is that the defendant was a male at the time of the alleged marriage. The plaintiff testified that in November of 1968 he met the defendant, who appeared to be a female, on a street in Augusta, Georgia. He went with the defendant to a house of prostitution where they spent a short time together, but the plaintiff did not see the defendant unclothed or have any sexual relations. Thereafter, in early February, 1969 the defendant followed the plaintiff to his new duty station at Fort Hood, Texas. On February 22 the parties took part in a marriage ceremony in Belton, Texas. They returned to the plaintiff’s apartment. Being intoxicated, the plaintiff went to sleep. He awoke at 2 o’clock in the morning, reached for the defendant and upon touching the defendant, discovered that the defendant had male sexual organs. He immediately left the bed, ‘ ‘ got drunk some more ’ ’ and went to the bus station. Finding no buses running, he returned to his apartment and slept on the couch. The next day the defendant informed the plaintiff that he intended to undergo an operation to have the male organs removed.
The parties never lived together and never had any type of sexual relationship. The plaintiff was sent overseas in March, 1969 and returned in April, 1970. In the interim, the defendant sent numerous letters to the plaintiff and medical bills for hospital and surgical expenses. The Army also deducted an allotment for the defendant from the plaintiff’s pay. After the plaintiff returned from overseas he saw the defendant once in court in San Francisco, where he arranged the defendant’s release from jail on a prostitution charge and later traveled with the defendant to New York 'City for the purpose of arranging a legal divorce or separation. The defendant told him on this trip that surgery had been completed and that “ she ” was now a woman.
The instant action was commenced when the parties were in New York. (Plaintiff is a life-long resident.) The defendant retained New York counsel who appeared for “ her ” in this *984 action. The defendant then left for the West Coast and apparently has lived at various addresses in San Francisco and in Tacoma, Washington. Defendant has not answered any correspondence from her attorney and has not made “ herself ” available for medical or other examinations. Despite liberal adjournments by the court on ample notice, “she” did not appear for the trial. The only communication the plaintiff has had has been bills for merchandise the defendant has been charging.
The court finds as a fact that the defendant was not a female at the time of the marriage ceremony. It may be that since that time the defendant’s sex has been changed to female by operative procedures, although it would appear from the medical articles and other information supplied by counsel, that mere removal of the male organs would not, in and of itself, change a person into a true female. What happened to the defendant after the marriage ceremony is irrelevant, since the parties never lived together.
The law makes no provision for a ‘1 marriage ’ ’ between persons of the same sex. Marriage is and always has been a contract between a man and a woman. (See Morris v. Morris, 31 Misc 2d 548, 549.) “ ‘ Marriage ’ may be defined as the status or relation of a man and a woman who have been legally united as husband and wife. It may be more particularly defined as the voluntary union for life of one man and one woman as husband and wife.” (52 Am. Jur. 2d, Marriage, § 1.) Black’s Law Dictionary furnishes three definitions of marriage, all of which recognize that it is a union or contract between a man and a woman. As was stated in Mirizio v. Mirizio (242 N. Y. 74, 81): “ The mere fact that the law provides that physical incapacity for sexual relationship shall be ground for annulling a marriage is of itself sufficient indication of the public policy that such relationship shall exist with the result and for the purpose of begetting offspring.”
The instant case is different from one in which a person seeks an annulment of a marriage or to declare the nullity of a void marriage because of fraud or incapacity to enter into a marriage contract or some other statutory reason. Those cases presuppose the existence of the two basic requirements for a marriage contract, i.e., a man and a woman. Here one of these basic requirements was missing. The marriage ceremony itself was a nullity. No legal relationship could be created by it. Since the action, then, is in actuality not one to annul a marriage or to declare the nullity of a void marriage, but to declare that no marriage could legally have taken place between the plaintiff *985 and the defendant, the court finds that section 144 of the Domestic Relations Law is inapplicable.
Accordingly, the court declares that the so-called marriage ceremony in which the plaintiff and defendant took part in Belton, Texas, on February 22, 1969 did not in fact or in law create a marriage contract and that the plaintiff and defendant are not and have not ever been “ husband and wife ” or parties to a valid marriage.