# In Re: Rees Estate

*Kiefer N. Gerstley*, for petitioner.
*David A. Wion*, for respondent.

SWOPE, *P.J.*, January 12, 1983—The matter presently before this court calls for the determination of the validity of an election filed against the will of decedent, Spurgeon D. Rees. Decedent, Spurgeon D. Rees, died September 24, 1978, a resident of the City of Harrisburg, Dauphin County, Pa., having resided at 2311 North Front Street, River House Apartments, City of Harrisburg. On September 28, 1978, the last will and testament of decedent was probated and letters testamentary granted to the National Central Bank as executor; the National Central Bank is now known as Hamilton Bank. On January 29, 1979, an election to take against a will was filed by Dorothea L. Rees of Hialeah, Florida. The aforesaid Dorothea L. Rees alleges to be the common-law wife of decedent,

Spurgeon D. Rees. On January 21, 1980, Dorothea Rees filed a petition for this court to issue a commission for depositions to be taken in Florida relating to this matter. On December 18, 1980, those depositions were taken and are now a part of the record before us.

In order to establish her right to elect to take against the will, Dorothea L. Rees must establish that she was in fact the spouse of decedent, Spurgeon D. Rees, at the time of his death on September 24, 1978. The record indicates that the claimant, Mrs. Rees, and decedent had previously been married in El Paso, Texas, on May 13, 1954. The record also indicates that later this same day, May 13, 1954, Mr. and Mrs. Spurgeon D. Rees crossed the border into Mexico where they obtained a divorce decree in the City of Juarez. Spurgeon D. Rees and Dorothea L. Rees had one child, a son named Morgan Butler Rees. Morgan was born on January 29, 1953. Because the Mexican divorce decree was in effect at the time of Spurgeon D. Rees' death, Dorothea L. Rees must establish to the court's satisfaction that a common-law remarriage took place before Spurgeon D. Rees' death.

In all cases in which a purported common-law marriage is asserted, the burden of proof is on the party asserting the common-law marriage to prove the existence of the same. Estate of Gavula, 490 Pa. 535, 419 A.2d. 169 (1980). Moreover, since our courts have regarded common-law marriage as a fruitful source of perjury and fraud to be tolerated and not encouraged, see Manfredi Estate, 399 Pa. 285, 159 A.2d 697 (1960); Wagner Estate, 398 Pa. 531, 129 A.2d 495 (1960), it is necessary for the party alleging herself to be the surviving spouse to prove any such allegation with precision and certainty, by evidence of quantity and quality as will

stand up under great scrutiny. Estate of Gavula, supra; Manfredi Estate, supra. This is especially true where one of the parties involved in the alleged civil contract is dead, and the claim of the surviving party is made in order to share in the distribution of the deceased's estate. Manfredi Estate, supra; Baker v. Mitchell, 143 Pa. Super. 50, 17 A.2d 738 (1943). As the court stated in Stevenson's Estate, 272 Pa. 291, 301, 116 Atl. 162, 165 (1922):

"when the lips of a man are sealed by death, and he leaves no satisfactory evidence as to the existence of such contract, courts will be very slow to establish it in derogation of the undoubted rights of those who follow him."

In her trial memorandum, Dorothea L. Rees contends that the proof required to establish a common-law remarriage is not as strict as for a first marriage. While this may be true, it is also true that the burden of proof is greater in a case where the relationship between the parties began as a meretricious relationship. A meretricious relationship once begun is assumed to continue as such, and to convert a meretricious relationship into a valid legal marriage, it must be proven by clear and convincing evidence that both parties intended their relationship to constitute such a marriage. Calanno Estate, 14 D.&C. 2d 153 (1958). Evidence that the relationship between Spurgeon D. Rees and Dorothea L. Rees began meretriciously, thus adding to Mrs. Rees' already heavy burden of proof, can be seen by comparing the date on the El Paso marriage license with the date on their son's birth certificate.

Dorothea L. Rees' trial memorandum also contends that words of present intent are not necessary to establish a common-law remarriage. While this may be true in a case where there is no question whatsoever that the intentions of both parties is that

they become man and wife, Mrs. Rees' contention is not generally true. In general, Pennsylvania law requires the uttering of words in the present tense with the view and for the purpose of establishing the relation of husband and wife. Gower Estate, 445 Pa. 554, 254 A.2d 742 (1971). In extraordinary cases where the actions of both parties may speak louder than words, and where it is so obvious that both parties possess the required intent to form a valid common-law marriage, proof that words de praesenti were spoken may not be required in order to prevent a clear injustice. Wagner's Estate, 398 Pa. 531, 159 A.2d 495 (1960). The case presently before us is clearly not in the same category as are those extraordinary cases where this requirement was allowed to be brushed aside.

In addition to the required words de praesenti, Pennsylvania law requires both cohabitation and a general reputation in the community as being husband and wife. Furthermore, the kind of cohabitation and reputation which support an allegation of common-law marriage must be constant, broad and general. As the court in Manfredi Estate stated:

"Because it is often difficult to prove a common law marriage by words in praesenti, the law has created or raised a rebuttable presumption of marriage where *two absolutely essential elements* are conjoined and co-exist — constant, *as distinguished from an irregular or inconstant, cohabitation, plus a reputation of marriage, which is not partial or divided but is broad and general.*" (Emphasis by the court) Manfredi Estate, supra, 399 Pa. at 291.

The record before us reveals that Spurgeon D. Rees and Dorothea L. Rees certainly were not in constant

cohabitation. The testimony of all four deponents, when viewed in its totality, establishes no more than infrequent visitations, usually on holidays and occasionally at other times throughout the year for some uncertain number of years between the late 1950's and the early 1970's. The record shows clearly that there was no continous establishment of a household, and no cohabitation that could be considered constant or continuous.

Dorothea L. Rees also attempted, through the testimony of each of the deponents, to show the court that there existed a reputation in her community that Spurgeon D. Rees and herself were husband and wife. It is clear from an assessment of this testimony concerning evidence of the reputation of the parties in the community that the facts which were sufficiently established indicate only that Dorothea Rees and Spurgeon Rees lived together in a house occasionally, and that some of their neighbors perhaps thought they were married. The record before us also reveals that Spurgeon Rees held himself out as an unmarried man to everyone in the Harrisburg community where he lived and worked. For the years 1971 to 1977, all within the time period which Dorothea L. Rees indicates she and decedent were married, Pennsylvania tax returns and federal tax returns were filed by Spurgeon Rees. On these returns the decedent indicated that he was single with one dependent. It is clear from the record that there was not a broad, general or undivided reputation or holding out that Spurgeon D. Rees and Dorothea L. Rees were husband and wife. Without constant cohabitation and reputation, a legal, valid common-law marriage cannot exist. Accordingly we find no common-law marriage to exist in the present case.

## ORDER

Now this January 12, 1983, the election of Dorothea L. Rees, as surviving spouse, to take against the will of Spurgeon D. Rees, deceased, in the above captioned matter, is hereby stricken.