476 A.2d 952

**John DE SANTO, Appellant,**

v.

**William BARNSLEY.**

Superior Court of Pennsylvania.

Argued Oct. 11, 1983.

Filed May 11, 1984.

Rosalie Davies, Narberth, for appellant.

Howard A. Finkelman, Philadelphia, for appellee.

David W. Webber, Philadelphia, amicus curiae Lambda Legal Defense and Education Fund, Inc.

Before SPAETH, President Judge, and MONTEMURO and POPOVICH, JJ.

SPAETH, President Judge:

This case presents the novel issue of whether two persons of the same sex can contract a common law marriage. We hold that they cannot, as a matter of law. The order of the trial court dismissing appellant's complaint for divorce is therefore affirmed.

On February 16, 1981, appellant, John DeSanto, filed a complaint for divorce against appellee, William Barnsley. In his complaint appellant alleged that on June 14, 1970, in a ceremony before friends, he and appellee entered into a common law marriage, and that then they lived together until November 15, 1980. Appellant requested a divorce, equitable distribution, alimony, alimony pendente lite, and costs. Appellee, in his answer, denied that he and appellant were ever married or capable of being married. Appellant filed a petition to determine marital status, pursuant to section 206 of the 1980 Divorce Code, and after a hearing on the petition, the trial court, on February 17, 1982, entered a decree dismissing appellant's complaint. The decree was accompanied by an opinion holding that as a matter of law two persons of the same sex cannot contract a common law marriage. Appellant appealed to this court. After a pre-submission conference, and upon agreement of the parties, the case was remanded to the trial court, and on September 2, the court issued another opinion, in which, after discussing the credibility of the witnesses who had testified at the hearing on appellant's petition to determine marital status, the court "h[e]ld that [appellant] has not met the burden of proof sufficient to establish a common law marriage, even if two persons of the same sex could establish a marriage relationship." Slip op. at 5.

Appellant argues: (1) that the trial court erred in holding that as a matter of law two persons of the same sex cannot contract a common law marriage; (2) that to deny the validity of common law marriage between two persons of the same sex is proscribed by the Pennsylvania Equal Rights Amendment, Pa. Const., Article I, Section 28; and (3) that the trial court erred with respect to certain of its

findings of fact and evidentiary rulings. On the first argument, we find no error. We do not consider the second and third arguments. Appellant has waived the second argument, for he did not make it to the trial court; and given our conclusion that as a matter of law he and appellee could not contract a common law marriage, it is of no importance whether the trial court erred in its findings and evidentiary rulings.

-1-

The issue of whether two persons of the same sex may contract a common law marriage has not been addressed in Pennsylvania, nor, to our knowledge, in any other jurisdiction. Other jurisdictions have considered whether statutory or ceremonial marriage can be entered into by same-sex couples, and have uniformly held that it cannot be. One such case is *Baker v. Nelson,* 291 Minn. 310, 191 N.W.2d 185 (1971), *appeal dismissed,* 409 U.S. 810, 93 S.Ct. 37, 34 L.Ed.2d 65 (1972). In *Baker,* two males applied for a marriage license and the clerk declined to issue one on the sole ground that they were of the same sex. The Minnesota Supreme Court affirmed the trial court's order quashing a writ of mandamus, and specifically directed that a marriage license not be issued. The court rejected the argument that the absence of an express statutory prohibition against same-sex marriages showed a legislative intent to authorize such marriages. The court found that the statute used "marriage" as a term of common usage, "meaning the state of union between persons of the opposite sex," *id.* at 311, 191 N.W.2d at 186, and referred to dictionary definitions. Supporting this interpretation of legislative intent was the fact that the marriage statutes dated back to territorial days, when "marriage" was thought of by the original draftsmen as heterosexual; also supportive was the heterosexual import of many words in the statute before the court, such as "husband and wife" and "bride and groom." In *Anonymous v. Anonymous,* 67 Misc.2d 982, 325 N.Y.S.2d 499 (1971), the court held that a marriage

ceremony between two males did not in fact or in law create a marriage. The plaintiff sought a declaration of marital status because, while he had thought he was marrying a woman, the defendant turned out to be a man. The court, looking to case law and dictionary definitions, said that "marriage is and always has been a contract between a man and a woman." *Id.* at 984, 325 N.Y.S.2d at 500. In *Singer v. Hara*, 11 Wash.App. 247, 522 P.2d 1187 (1974), the court held that Washington's marriage statutes prohibit same-sex marriages, and in *Jones v. Hallahan*, 501 S.W.2d 588 (Ky. App.1973), the court held that while Kentucky statutes neither specifically prohibit nor authorize issuance of a marriage license to same-sex couples, the appellants were prevented from marrying "by their own incapability of entering into a marriage as that term is defined," *id.* at 589. Finally, in reviewing the denial of "immediate relative" status for immigration purposes to a male Australian citizen who went through a purported marriage ceremony with a male American citizen, a federal court rejected the claimed marriage under both Colorado and federal statutory law. *Adams v. Howerton*, 486 F.Supp. 1119 (C.D.Cal.1980); *aff'd*, 673 F.2d 1036 (9th Cir.1982), *cert. denied*, 458 U.S. 1111, 102 S.Ct. 3494, 73 L.Ed.2d 1373 (1982).

In citing these cases we recognize that, as framed by appellant, the issue we are asked to decide is not whether the Pennsylvania Marriage Law, 48 P.S. § 1–1 *et seq.*, permits or prohibits marriage between two persons of the same sex. For appellant does not claim that he and appellee have a valid statutory marriage. Rather, he seeks to distinguish common law marriage from statutory marriage. Brief for Appellant at 8. Nevertheless, same-sex statutory marriage cases are pertinent to our discussion, for "marriage" presumably has the same meaning whether it is preceded by "common law" or "statutory". Moreover, as will appear, the limits of common law marriage must be defined in light of the limits of statutory marriage.

As in other states, Pennsylvania's Marriage Law does not define marriage, nor do we have any case that specifically

states that "marriage," either common law or statutory, is limited to two persons of opposite sex. Nevertheless, the inference that marriage is so limited is strong. The Marriage Law refers to the "male and female applicant," 48 P.S. § 1–3, and the cases assume persons of opposite sex. The following quotation from *Manfredi Estate*, 399 Pa. 285, 159 A.2d 697 (1960), is illustrative, both for its use of words with heterosexual import in relation to marriage, and for the implication that "marriage" has the same meaning in its common law and statutory forms:

Marriage in Pennsylvania is a civil contract by which a man and a woman take each other for husband and wife. There are two kinds of marriage: (1) ceremonial; and (2) common law. A ceremonial marriage is a wedding or marriage performed by a religious or civil authority with the usual or customary ceremony or formalities. It is too often forgotten that a common law marriage is a marriage by the express agreement of the parties without ceremony, and almost invariably without a witness, *by words*—not in futuro or in postea, but—*in praesenti*, uttered with a view and for the purpose of establishing the relationship of husband and wife

. . . .

*Id.*, 399 Pa. at 291, 159 A.2d at 700 (citations omitted). Other common law marriage cases that speak in terms of establishing the "relationship of husband and wife" include: *In re Estate of Gower*, 445 Pa. 554, 284 A.2d 742 (1971); *McGrath's Estate*, 319 Pa. 309, 179 A. 599 (1935); *Commonwealth v. Stump*, 53 Pa. 132 (1866); *Commonwealth ex rel. McDermott v. McDermott*, 236 Pa.Super. 541, 345 A.2d 914 (1975); *Baker v. Mitchell*, 143 Pa.Super. 50, 17 A.2d 738 (1941). The implication of these cases that common law marriage is limited to two persons of opposite sex is reinforced by definitions of "marriage" from such sources as Black's Law Dictionary [1] and Webster's Diction-

1. The Fifth Edition includes a citation to the *Singer v. Hara, supra,* definition of marriage as the "legal union of one man and one woman as husband and wife." Black's Law Dictionary 876 (5th ed. 1979). It

ary [2]. We therefore conclude that up until now common law marriage has been regarded as a relationship that can be established only between two persons of opposite sex.

Appellant argues that the trial court "confuse[d] the ecclesiastical and the common law marriage." Brief for Appellant at 10. According to appellant, "[t]he church and ecclesiastical courts were only interested in regulating morality and upholding Judeo-Christian teaching," *id.*, whereas common law marriage has always been a judicial recognition of an oral contract, designed to legitimize children, protect inheritances, and more recently, to accord benefits under governmental programs like Social Security or state statutes like the Divorce Code, *id.* This function of common law marriage—to protect long-term stable relationships—is equally well-served, appellant argues, whether the marriage be between two persons of opposite sex or the same sex. Given our conclusion that up until now common law marriage has been regarded as a relationship that can be established only between two persons of opposite sex, what appellant's argument comes down to is a request that we expand common law marriage to include a contract between two persons of the same sex. The question, therefore, is whether any sound reason supports such an expansion.

The history of common law marriage argues against expansion. Judicial recognition of common law marriages was a historical necessity, since the social conditions of

then repeats the definition from the Fourth Edition: "Marriage is the legal status, condition, or relation of one man and one woman united in law for life ... for the discharge to each other and the community of the duties legally incumbent on those whose association is founded on the distinction of sex." *Id.* The Fourth Education was cited by the courts in *Jones v. Hallahan, supra,* and *Baker v. Nelson, supra.*

The definition of common law marriage contains the following: "Such marriage requires a positive mutual agreement, permanent and exclusive of all others, to enter into a marriage relationship, co-habitation sufficient to warrant a fulfillment of necessary relationship of man and wife, and an assumption of marital duties and obligations." Black's Law Dictionary 251 (5th ed. 1979).

2. "The state of being united to a person of the opposite sex as husband or wife." Webster's Third New International Dictionary 1384 (1976).

pioneer society made access to clergy or public officials difficult. Freedman, *The Law of Marriage and Divorce in Pennsylvania,* § 48 (2d ed. 1957); *see also* Note, *The Decline and Fall of Common-Law Marriage in Pennsylvania,* 18 Temp.U.L.Q. 264 (1944). But as conditions changed, so did the attitude of the courts: "The law of Pennsylvania *recognizes* common law marriages. But they are a fruitful source of perjury and fraud, and, in consequence, they are to be *tolerated, not encouraged;* ... " *Baker v. Mitchell, supra,* 143 Pa.Superior Ct. at 54, 17 A.2d at 741 (emphasis in original). In *Buradus v. Gen. Cement Prod. Co.,* 159 Pa.Super. 501, 48 A.2d 883 (1946), *aff'd,* 356 Pa. 349, 52 A.2d 205 (1947), we noted "a growing judicial impatience ... and a progressive change in judicial view requiring higher degrees of proof where [common law] marriages are asserted." *Id.,* 159 Pa.Superior Ct. at 503, 48 A.2d at 884. Courts were admonished to look upon the professed contract with "great scrutiny," and it was said that the proponent of the marriage has a "heavy burden." *Manifredi Estate, supra* 399 Pa. at 292, 159 A.2d at 700. To expand common law marriage to include a contract between two persons of the same sex would be, not simply inconsistent with such reluctant toleration, but an about-face.

Nor do considerations of social policy support expansion of common law marriage. Certainly the law should take into account changes in social relationships, but that may be done without expanding common law marriage. In *Knauer v. Knauer,* 323 Pa.Super. 206, 470 A.2d 553 (1983), this court, following "palimony" cases from other states, held that "agreements between non-married cohabitors fail only to the extent that they involve payment for sexual services." *Id.,* 323 Pa.Superior Ct. at 228, 470 A.2d at 564. In permitting recovery on such an agreement, we emphasized that our decision was based on principles of contract law, and said that "we do not view this as a way of effectively creating a common law marriage where there is none. While the damages awarded [in an action on an agreement between cohabitors] may to some extent parallel a property

settlement following a divorce, the two are not the same. Parties to a common law marriage are legally married and can, by virtue of their status as spouses, make claims to property even absent an agreement. Cohabitors, on the other hand, acquire no automatic claims to property from cohabitation." *Id.*, 323 Pa.Superior Ct. at 228, 470 A.2d at 564.

Finally, attention to the respective roles of the Legislature and the judiciary compels the conclusion that common law marriage should not be expanded. Generally speaking, statutory marriage and common law marriage have been alternatives, common law marriage being seen not as competing with statutory marriage but, rather, as substituting for it when social conditions made obtaining a marriage license impractical. *See* Freedman, *supra.* Appellant, however, would have us create a form of common law marriage, not in response to the *impracticality* of obtaining a marriage license, but in response to the *impossibility* of obtaining one. For we have no doubt that under our Marriage Law it is impossible for two persons of the same sex to obtain a marriage license. *See* cases cited *supra,* pp. 185–186. If, under the guise of expanding the common law, we were to create a form of marriage forbidden by statute, we should abuse our judicial power: our decision would have no support in precedent, and its practical effect would be to amend the Marriage Law—something only the Legislature can do.

-2-

Appellant argues that to deny the validity of common law marriage between two persons of the same sex is proscribed by the Pennsylvania Equal Rights Amendment. We may not consider this argument unless it was raised in the trial court. *See Irrera v. Southeastern Pennsylvania Transportation Authority,* 231 Pa.Super. 508, 331 A.2d 705 (1974).

The argument was not raised in appellant's complaint or petition to determine marital status. Nor was it raised in any of appellant's three submissions to the trial court. The

first submission, entitled "Plaintiff's Memorandum of Law in Support of Petition to Determine Marital Status," contains a section entitled "A Constitutional Overview," but this section does not mention the Pennsylvania Equal Rights Amendment. Rather than raise any constitutional arguments, appellant accepts the decision in *Baker v. Nelson, supra,* upholding the denial of a marriage license to two males, and argues that common law marriage should be distinguished from statutory marriage—the same argument that we have considered in the preceding part of this opinion, and have found without merit. The second submission, entitled "Plaintiff's Supplemental Memorandum of Law in Support of Petition to Determine Marital Status," cites two Executive Orders of Governor Shapp, one committing the Governor's administration to work against discrimination on the basis of affectional preference, and the other establishing the Council for Sexual Minorities. The Supplemental Memorandum argues that to allow opposite-sex couples the benefits of common law marriage while denying those benefits to same-sex couples would be the kind of discrimination these Executive Orders were designed to help to eliminate. Again, no mention is made of the Equal Rights Amendment. Finally, accompanying the Supplemental Memorandum is a brief discussing the evidence adduced at the hearing before the trial court, in the context of Pennsylvania common law marriage cases.

■ It is therefore apparent that appellant did not argue the Equal Rights Amendment to the trial court. Accordingly, we shall not consider his argument on the Amendment now.

-3-

Appellant also argues that the trial court erred with respect to certain of its finding of fact and evidentiary rulings.[3] The gist of appellant's argument is that the

3. The challenged findings are:
   1. Appellant did not recall the exact words said at the ceremony.

evidence, properly viewed, shows that he and appellee did exchange words in the present tense with the intention of entering into a common law marriage. However, we shall not consider this argument either, for whatever the parties' words and intentions, they could not enter into a common law marriage.

Affirmed.

2. Certain wedding anniversary cards did not constitute indirect evidence that a marriage had taken place.

3. The testimony of one Paul Hill was not that of a hostile witness.

4. Appellant's testimony was not credible.

The challenged rulings are:

1. The trial court's refusal to characterize one Alexander Contino as a hostile witness, and

2. The trial court's refusal to hear expert testimony on "gay life-styles."