# Kern v. Taney and Attorney General
of Pennsylvania

C.P. of Berks County, no. 09-10739, I.D. #2

*Lisa D. Gentile,* for plaintiff.
*Calvin R. Koons, senior deputy attorney general,* for intervenor.

LASH, *J.,* March 15, 2010—Plaintiff, Carole Ann Kern, has filed the above-captioned action, seeking a divorce from the defendant, Robin Lynn Taney. The parties are both female, and were married in the Commonwealth of Massachusetts, under its laws which permit same-sex marriages. After being notified by counsel for plaintiff that the within divorce action involved parties of the same sex, this court, on its own motion, scheduled and conducted a hearing to determine whether this court has authority to grant the relief requested. Counsel for plaintiff duly notified the attorney general, who intervened and participated in the hearing, which was held on February 17, 2010.

According to the complaint, the parties were married on June 25, 2009 in Brewster, Massachusetts. On October 19, 2009, plaintiff, a resident of Berks County, Pennsylvania, filed the within action, alleging that the marriage between the parties is irretrievably broken, and

requesting that this court enter a decree in divorce under section 3301(c) of the Divorce Code.[1,2]

Before considering the issues at bar, it is appropriate for this court to comment on our decision that it was proper to raise this matter sua sponte. Our Superior Court in the case of *Bernhard v. Bernhard,* 447 Pa. Super. 118, 123-24, 668 A.2d 546, 548-49 (1995), provides a summary on the trial court's authority to question subject matter jurisdiction. The court stated that when subject matter jurisdiction is in issue:

"the trial court's function is to determine whether the law will bar recovery because of the lack of such jurisdiction. *Philadelphia Housing Authority v. Barbour,* 405 Pa. Super. 140, 143, 592 A.2d 47, 48 (1991), *affirmed,* 532 Pa. 212, 615 A.2d 339 (1992). (citations omitted) 'The action or inaction of the parties cannot bestow subject matter jurisdiction upon a court that otherwise lacks it.' *Clay v. Advanced Computer Applications,* 370 Pa. Super. 497, 504, 536 A.2d 1375, 1379 (1988) (en banc), *modified,* 522 Pa. 86, 559 A.2d 917 (1989). (citations omitted) Therefore, our rules of civil procedure provide that either party, or the court sua sponte, can

1. 23 Pa.C.S. §3301(c).

2. Apparently, the parties are not permitted to obtain a divorce in Massachusetts for failure to qualify under the residency requirements, although the parties were permitted to be married there. Massachusetts General Law, chapter 207, §19, requires the parties to file their intention to be married at least three days prior to the date of their marriage and does not appear to establish any residency requirements. However to obtain a divorce, the parties have to reside in the Commonwealth of Massachusetts for one year preceding the commencement of the action or be domiciled in Massachusetts. MGL, chapter 208, §§4 and 5.

raise the lack of subject matter jurisdiction at any time. *Id.* (citing former Pa.R.C.P. 1032(2)); *United Carolina Bank v. Martocci,* 416 Pa. Super. 16, 20, 610 A.2d 484, 486 (1992); *Barndt v. Barndt,* 397 Pa. Super. 321, 325, 580 A.2d 320, 322 (1990).

"Jurisdiction is the capacity to pronounce a judgment of the law on an issue brought before the court through due process of law. It is the right to adjudicate concerning the subject-matter in a given case . . . . Without such jurisdiction, there is no authority to give judgment and one so entered is without force or effect.

"*Rieser v. Glukowsky,* 435 Pa. Super. 530, 535, 646 A.2d 1221, 1223 (1994) (quoting *Mintz v. Mintz,* 83 Pa. Super. 85, 88 (1924)). The trial court has jurisdiction if it is competent to hear and determine controversies of the general nature of the matter involved sub judice. *Id.* at 536, 646 A.2d at 1224. (citations omitted) 'Jurisdiction lies if the court had power to enter upon the inquiry, not whether it might ultimately decide that it could not give relief in the particular case.' *Id.* (citations omitted) When determining whether the trial court has subject matter jurisdiction, we must look first to Pennsylvania law. *United Carolina Bank v. Martocci, supra* (citing *Barndt v. Barndt, supra*). . . ."

Turning then to the jurisdictional issue itself, we observe that our authority to grant a divorce is conferred by the Pennsylvania Divorce code, 23 Pa.C.S. §3101 et seq. Section 3104(a) of the Divorce Code provides that the court of common pleas "shall have original jurisdiction in cases of divorce." 23 Pa.C.S. §3104(a). Section 3103 of the Divorce Code defines "divorce" as "divorce

from the bonds of matrimony." 23 Pa.C.S. §3103. Section 3102 of the Divorce Code, providing the legislative findings and intent for the Divorce Code, states, in pertinent part:

"The family is the basic unit in society and the protection and preservation of the family is of paramount public concern. Therefore, it is the policy of the Commonwealth to: (1) Make the law for legal dissolution of marriage effective for dealing with the realities of matrimonial experience. . . ." 23 Pa.C.S. §3102.

We find it readily apparent, therefore, that relief under the Divorce code can only be obtained by parties who are recognized to be married. For example, an unmarried heterosexual couple who have resided together for several years and have comingled their assets cannot, upon their breakup, rely upon the Divorce code for disposition of property rights or alimony. The pivotal question, therefore, is whether Pennsylvania should recognize the marriage performed in Massachusetts as a valid marriage.

In Section 1102 of the Marriage Law,[3] marriage is defined as "a civil contract by which one man and one woman take each other for husband and wife." Section 1704 entitled "Marriage between persons of the same sex" speaks directly to the issue at bar, stating:

"It is hereby declared to be the strong and long-standing public policy of this Commonwealth that marriage shall be between one man and one woman. A marriage

_____
3. 23 Pa.C.S. §1102.

between persons of the same sex which was entered into in another state or foreign jurisdiction, even if valid where entered into, shall be void in this commonwealth." 23 Pa.C.S. §1704.

"Void" is defined in Black's Law Dictionary as "of no legal effect; null." Black's Law Dictionary, 8th ed., p. 1604.

The import of these provisions is that this court, based on the law in Pennsylvania as it currently exists, cannot grant a divorce to these parties. Their marriage, perhaps considered valid in Massachusetts and some other states, is not recognized in Pennsylvania. Without a legally recognizable marriage, relief under the Divorce Code is simply not available.

We also note that the Full Faith and Credit Clause of the United States Constitution does not require Pennsylvania to recognize this Massachusetts marriage.[4] Federal statutory law[5] specifically addresses the issue, setting forth "[n]o state . . . shall be required to give effect to any public act, record, or judicial proceeding of any other state . . . respecting a relationship between persons of the same sex that is treated as a marriage under the laws of such other state . . . or a right or claim arising from such relationship."

At the time of the hearing, counsel for plaintiff essentially acknowledged that the current Pennsylvania

---

4. U.S. Constitution, Article IV, Section 1 states, in part: "Full faith and credit shall be given in each state to the public acts, records, and judicial proceedings of every other state."
5. 28 U.S.C. §1738C.

law does not afford her client relief. Plaintiff contends, however, that Pennsylvania law, particularly Section 1704 of the Marriage Law, is unconstitutional, as it infringes upon a fundamental right granted to her under the United States and Pennsylvania Constitutions,[6] namely, the right of marriage. This infringement violates the substantive due process and equal protection provisions of the respective constitutions.[7]

If a statute restricts a fundamental right, it must be strictly scrutinized to determine whether it violates either the equal protection or due process clauses. *Schmehl v. Wegelin*, 592 Pa. 581, 591 n.6, 927 A.2d 183, 188 n.6 (2007). Plaintiff urges that there is no interest the Commonwealth can show that is sufficiently compelling to satisfy the within challenge. Moreover, abridgement of the right to marry denies same-sex partners, among

---

6. Article I, Section I, of the Pennsylvania Constitution states:

"*Section (1) Inherent rights of mankind*

"All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness."

7. Plaintiff cites Article I, Section 26 and Section 28, of the Pennsylvania Constitution which state:

"*Section (26) No discrimination by Commonwealth and its political subdivisions*

"Neither the Commonwealth nor any political subdivision thereof shall deny to any person the enjoyment of any civil right, nor discriminate against any person in the exercise of any civil right.

"*Section (28) Prohibition against denial or abridgment of equality of rights because of sex*

"Equality of rights under the law shall not be denied or abridged in the Commonwealth of Pennsylvania because of the sex of the individual."

other things, substantial benefits which would accrue upon obtaining spousal status such as:

"(1) The authority to make what can be profound health care decisions for a spouse and hospital visitation;

"(2) The authority to make decisions upon the death of a partner/spouse, including funeral decisions, organ donation;

"(3) The right to inherit;

"(4) The right and standing to sue upon the death of a spouse/partner;

"(5) The right to receive health insurance and pension benefits;

"(6) The right to file joint income tax returns;

"(7) The right to have a child legally be considered their child, without having to incur expense of adoption."[8]

Accordingly, plaintiff requests this court rule that the definition of marriage in Pennsylvania include same-sex marriages, that Section 1102 and Section 1704 of the Marriage Law be declared unconstitutional, and that this court permit the parties to seek remedies under the Divorce Code.

Prior to conducting our analysis, we make three preliminary observations. First, we note that a presumption

---

8. Plaintiff's "memorandum of law in support of this honorable court having subject matter jurisdiction to dissolve the marriage in *Kern v. Taney*," eighth unnumbered page.

exists that the laws of Pennsylvania are constitutional. As stated in *Nixon v. Commonwealth of Pennsylvania,* 576 Pa. 385, 398-99, 839 A.2d 277, 286 (2003):

"We reiterate the well-established rule that a law is presumed to be constitutional and may only be found to be unconstitutional if the party challenging the law can prove that it clearly, palpably, and plainly violates the constitution. See *Consumer Party of Pennsylvania v. Commonwealth,* 510 Pa. 158, 507 A.2d 323, 331-32 (1986) (citing *Pennsylvania Liquor Control Board v. The Spa Athletic Club,* 506 Pa. 364, 485 A.2d 732, 735 (1984)); see also 1 Pa.C.S. §1922(3). Furthermore, in determining the constitutionality of a law, this court may not question the propriety of the public policies adopted by the General Assembly for the law, but rather is limited to examining the connection between those policies and the law. See *Finucane v. Pennsylvania Milk Marketing Board,* 136 Pa. Commw. 272, 582 A.2d 1152, 1154 (1990); see also *Parker v. Children's Hospital of Philadelphia,* 483 Pa. 106, 394 A.2d 932, 937 (1978) (the power of judicial review must not be used as a means by which the courts might substitute [their] judgment as to the public policy for that of the legislature)."

Secondly, the equal protection[9] and due process[10] provisions of the United States and Pennsylvania Con-

9. The Pennsylvania Supreme Court in *Small v. Horn,* 554 Pa. 600, 615 n.13, 722 A.2d 664, 672 n.13 (1998), states: "Pennsylvania's equal protection provision is set forth in Article I, Section 26, of the Pennsylvania Constitution, . . . [and] is analyzed under the same standards used by the United Supreme Court when reviewing equal protection claims under the Fourteenth Amendment." (citation omitted)

10. The Pennsylvania Commonwealth Court in *Doe v. Miller,* 886 A.2d 310, 314 (Pa. Commw. 2005), states: "Substantive due process

stitutions are coextensive, permitting our analysis to be the same under both federal and state law, with one exception.[11]

Third, although touching upon equal protection, plaintiff's argument relies on a substantive due process analysis. Importantly, she does not contend that section 1704 creates a legislative classification that is arbitrary or suspect. As such, our analysis for substantive due process and equal protection is essentially the same. Both analyses require an initial determination on whether plaintiff's decision to marry a person of the same sex is a decision guaranteed to her as a fundamental right under the constitutions. The answer to this question then determines the appropriate level of judicial review. Finally, the application of that review is balanced between the government's interest against the level of the infringement on the individual's interest. See *Schmehl v. Wegelin,* 592 Pa. at 589, 927 A.2d at 187. Accordingly, this court shall employ a substantive due process analysis and finds an analysis under equal protection to be unnecessary.

When dealing with infringement of an inherent or fundamental right, the analysis to be applied to the statute in question is a means-end review. *Nixon v. Com-*

---

protections afforded under the Pennsylvania Constitution and the United States Constitution are analyzed the same and are thus coextensive."

11. In *Nixon v. Commonwealth of Pennsylvania,* 576 Pa. at 400-401, n.15, 839 A.2d at 287-88, n.15, the Pennsylvania Supreme Court noted that for substantive due process challenges, the rational basis test is more restrictive under the Pennsylvania Constitution as set forth in the case of *Gambone v. Commonwealth,* 375 Pa. 547, 551, 101 A.2d 634, 636-37 (1954).

*monwealth,* 576 Pa. at 399, 400, 839 A.2d at 286-87. As stated, this analysis requires "strict scrutiny" by the courts, as more fully explained in the case of *Khan v. State Board of Auctioneer Examiners,* 577 Pa. 166, 842 A.2d 936, 947 (2004):

"When confronted with a constitutional challenge premised upon substantive due process grounds, the threshold inquiry is whether the challenged statute purports to restrict or regulate a constitutionally protected right. *Commonwealth v. Burnsworth,* 543 Pa. 18, 669 A.2d 883, 889 (1995). If the statute restricts a fundamental right, it must be examined under strict scrutiny. *Smith v. Coyne,* 555 Pa. 21, 722 A.2d 1022, 1025 (1999). Pursuant to that analysis, legislation that significantly interferes with the exercise of a fundamental right will be upheld only if it is necessary to promote a compelling state interest and is narrowly tailored to effectuate that state purpose. *Nixon,* [576 Pa. 385, 400-401,] 839 A.2d 277, 286-87; *Commonwealth v. Robinson,* 497 Pa. 49, 438 A.2d 964 (1981), *appeal dismissed,* 457 U.S. 1101, 102 S.Ct. 2898, 73 L.Ed.2d 1310 (1982)."

Marriage has long been established to be a "basic civil right of man, fundamental to our very existence and survival." *Loving v. Commonwealth of Virginia,* 388 U.S. 1, 12, 87 S.Ct. 1817, 1824 (1967). Further, intimate activities of married couples fall within the right to privacy, also a protection guaranteed to individuals. *Griswold v. Connecticut,* 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965).

While the right of marriage and the right of privacy bear a relationship to one another, they are not identical, each providing its own parameters for protection. This

becomes important when considering these protections in the context of a same-sex marriage, which represents an expansion of the traditional concept of marriage, as well as formal recognition of that expansion by the government. In essence, there are two questions which must be posed: first, whether the right of privacy bestowed on consenting adults, permitting them to engage in intimate activity without government interference, also guarantees a right to marry; and secondly, whether the fundamental right of marriage contemplates same-sex marriages.

The right of privacy in homosexual relationships is established in the case of *Lawrence v. Texas,* 539 U.S. 558, 123 S.Ct. 2472 (2003). In *Lawrence,* the United States Supreme Court struck down a Texas statute making it a crime for two persons, if of the same sex, to engage in certain intimate sexual conduct, namely, sodomy. The Supreme Court found that intimate activities of homosexual adults is protected. This right is founded upon the right to liberty under the Fourteenth Amendment, which encompasses the right to privacy.

In its opinion, the court discussed the historical development of the right to privacy in the context of intimate relationships. They note the beginning point to be the Supreme Court's decision in *Griswold,* a case where the court struck down a law prohibiting the use of contraception drugs, devices and counseling. In *Griswold,* the protected interest was considered within the context of the marriage relationship. However, after *Griswold* came the case of *Eisenstadt v. Baird,* 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972), a case where the court invalidated a law prohibiting the distribution of contraceptives to unmarried persons. A similar case cited was *Carey v. Population Services International,* 431 U.S.

678, 97 S.Ct. 2010, 52 L.Ed.2d 675 (1977), where the court invalidated a New York law forbidding the sale or distribution of contraceptive devices to persons under 16 years of age. In both *Eisenstadt* and *Carey,* the protection of privacy rights regarding sexual relationships was extended to unmarried persons. In *Eisenstadt,* the court stated:

"It is true that in *Griswold* the right of privacy in question inhered in the marital relationship . . . If the right of privacy means anything, it is the right of the individual, married or single, to be free from unwarranted governmental intrusion into matters so fundamentally affecting a person as the decision whether to bear or beget a child." *Id.,* 405 U.S. at 453, 92 S.Ct. at 1038.

Thus, protections under the right to privacy are afforded to conduct associated with intimacy of consenting adults, whether the adults are heterosexual or homosexual, married or single. There is no greater right to privacy for married individuals, nor is the right contingent on a marriage or other commitment.

In *Lawrence,* the court expressly declined to extend its holding to governmental recognition or sanctioning of homosexual marriages. 539 U.S. at 578, 123 S.Ct. at 2484. Therefore, under the current state of the law, we find that the right of consenting adults to engage in intimate conduct, without governmental interference, does not involve or guarantee the right to require a government to grant the parties a marriage.

Correspondingly, we find that the fundamental right to be married does not contemplate same-sex marriages. Fundamental rights granted to the United States and Pennsylvania citizens by the Constitutions are basic,

inherent rights, rights which form the very foundation of our status as free citizens. These rights are, therefore, longstanding in nature, based on history and tradition. As stated by Justice Goldberg in his concurrence in the *Griswold* case:

"In determining which rights are fundamental, judges are not left at large to decide cases in light of their personal and private notions. Rather, they must look to the 'traditions and (collective) conscience of our people' to determine whether a principle is 'so rooted (there) *** as to be ranked as fundamental.' *Snyder v. Commonwealth of Massachusetts,* 291 U.S. 97, 105, 54 S.Ct. 330, 332. The inquiry is whether a right involved 'is of such a character that it cannot be denied without violating those "fundamental principles of liberty and justice which lie at the base of all our civil and political institutions" ***.' *Powell v. State of Alabama,* 287 U.S. 45, 67, 53 S.Ct. 55, 63, 77 L.Ed. 158. 'Liberty' also 'gains content from the emanations of *** specific (constitutional) guarantees' and 'from experience with the requirements of a free society.' *Poe v. Ullman,* 367 U.S. 497, 517, 81 S.Ct. 1752, 1763, 6 L.Ed.2d 989 (dissenting opinion of Mr. Justice Douglas)." 381 U.S. at 493-94, 85 S.Ct. at 1686-87.

Marriage is, of course, an institution of longstanding. Justice Goldberg, again in his *Griswold* concurrence, calls the family "a relation as old and as fundamental as our entire civilization." *Id.* at 496, 85 S.Ct. at 1688. It is not an overstatement to say that the family is the basic unit of society. It represents one man and one woman coming together to form one being. From this union, comes offspring. Conversely, a same-sex relationship

deviates from this traditional concept, for the principles are like beings, without physical complement. They cannot foster offspring, except through artificial or adoptive means.

Of course, a same-sex couple can maintain a loving, monogamous relationship and the law cannot restrict such a relationship. This relational commitment, however, does not and could not qualify as a "traditional marriage." Until very recently, same-sex marriages were not recognized in any state of the union, and have never been recognized in Pennsylvania. The proposition that a same-sex marriage passes the test of a fundamental right, described by the Pennsylvania Supreme Court as the type of right "inherent in man's nature," among the "basic rights of human beings," and among the "Hallmarks of western civilization." *Western Pennsylvania Socialist Workers, 1982 Campaign v. Connecticut General Life Insurance Company,* 512 Pa. 23, 30-31, 515 A.2d 1331, 1335 (1986), is unsupportable.

Pennsylvania appellate courts have spoken on the validity of a same-sex marriage, albeit in a different context. In *DeSanto v. Barnsley,* 328 Pa. Super. 181, 476 A.2d 952 (1984), a case where a plaintiff seeking a divorce alleged that he and his partner had entered into a same-sex common law marriage, the Pennsylvania Superior Court affirmed the trial court which held, among other things, that as a matter of law, two persons of the same sex cannot contract a common-law marriage.[12] In its opinion, the superior court noted that while Pennsyl-

---

12. At the time of this decision, common-law marriages were valid in Pennsylvania, but are no longer recognized.

vania had not addressed this issue previously, other jurisdictions "have considered whether statutory or ceremonial marriage can be entered into by same-sex couples, and have uniformly held that it cannot be." *Id.,* 328 Pa. Super. at 184, 476 A.2d at 953. The court also observed that the statutory law in place at the time did not provide a definition of "marriage", but found a strong inference that marriage, whether common-law or statutory, is limited to two persons of opposite sex. The court also cited cases which, by implication, reinforced the concept of marriage being between two persons of opposite sex. *Id.* at 186, 476 A.2d at 954.

In her brief, plaintiff categorizes section 1704 as discriminatory against homosexuals and patently unfair. She compares the restriction to the ban on interracial marriages, which was struck down by the United States Supreme Court. In her brief she states:

"*Loving [v. Virginia], supra,* specifically demonstrates that views on marriage and marriage itself have changed. What has not changed, however, is the fact that at the end of the day, courts have understood that liberty is not liberty if it is not enjoyed by all. While before the issue may have been interracial marriage, the time has now come to include gays in our definition of 'we, the people' . . . As ridiculous as it sounds to have to actually state it . . . gays are people, although it is evidently something our legislature forgot. As the U.S. Supreme Court recently observed, 'times can blind us to certain truths and later generations can see that laws once thought necessary and proper in fact serve only to oppress.' *Lawrence v. Texas,* 539 U.S. 558 at 579, 123 S.Ct. 2472, 2484, 156 L.Ed.2d 508, 526 (2003). It is time to change our defini-

tions and extend that liberty and constitutional protections to 'we the people.'"[13]

This is a plea for social change, which plea implicitly recognizes that same-sex relationships cannot fall within the purview of a traditional marriage. If homosexuals had a fundamental right to be married to each other, this plea would be unnecessary.[14]

Courts should be reluctant to identify a right as fundamental when not clearly required by the constitution or established precedent. A court who finds a fundamental right where none exists bypasses the legislative process and denies the people a voice in effecting social policy, in essence, trumping democracy by judicial fiat. This concern is particularly crucial when the relief sought is, as here, a request to change the status quo. Here, there is no basis for finding that a same-sex marriage falls within the traditional concept of marriage.

Because no fundamental right has been implicated, application of the rational basis test is appropriate. As the Pennsylvania Supreme Court stated in *Khan,* 577 Pa. at 185, 842 A.2d at 947:

"We must determine whether the Act bears a real and substantial relationship to a legitimate legislative purpose and is neither arbitrary nor discriminatory. *Nixon,* [576

---

13. Plaintiff's "memorandum of law in support of this honorable court having subject matter jurisdiction to dissolve the marriage in *Kern v. Taney,*" tenth unnumbered page.

14. The *Loving* case cannot be relied upon by plaintiff as a basis for implicating social change to the traditional concept of marriage. *Loving* involved a statutory denial of marriage to interracial couples, an invidious discrimination based on race, a suspect classification, and does not involve an expansion of the definition of marriage.

Pa. 385, 400,] 839 A.2d 277, 286-87. Whether a statute is wise or whether it is the best means to achieve the desired result are matters left to the legislature, and not the courts. Moreover, the General Assembly is presumed to have investigated the question and ascertained what is best for the good of the profession and the good of the people. See *Matson v. Margiotti,* 371 Pa. 188, 88 A.2d 892 (1952), *rev'd on other grounds, Commonwealth v. Schab,* 477 Pa. 55, 383 A.2d 819 (1978). As long as there is a basis for finding that the statute is rationally related to a legitimate state interest, the statute must be upheld."

The objective sought to be achieved by our legislature in passing the amendment to section 1102 and adding section 1704 to the marriage law was to clearly set forth the law in Pennsylvania on the definition of marriage. The legislature recognized that Pennsylvania has a long-standing tradition that marriage is a union between a man and a woman and that same-sex marriages were never recognized. They note that the existing tradition was confirmed by the Pennsylvania Superior Court in *De-Santo.* The legislature's goal here was to reiterate and clarify, to take what was implicitly recognized, and state it explicitly. The amendment did not expand, limit, alter or otherwise change the law of the Commonwealth of Pennsylvania.

As such, the legislation did not impose an inequality on homosexuals. The language is straightforward and simple. No construction of the statutes should be given beyond that which is plainly stated.

Maintaining and preserving the institution of marriage in Pennsylvania represents a reasonable protection and

a proper and lawful exercise of the police power of the Commonwealth, which is available to preserve the public health, safety, welfare, and morals of its citizens. See *Loving, supra,* 388 U.S. at 7, 87 S.Ct. at 1821. In her concurrence in *Lawrence v. Texas,* 539 U.S. at 585, 123 S.Ct. at 2488, Justice O'Connor expressly found the preservation of the traditional institution of marriage to be a legitimate state interest, stating: "unlike the moral disapproval of same-sex relations . . . other reasons exist to promote the institution of marriage beyond mere moral disapproval of an excluded group."

For these reasons, we find that the statutes in question are based on a legitimate state interest and, therefore, find that the statutes pass constitutional muster.

One final point should be addressed. Plaintiff has a concern that she has no available remedy in Pennsylvania, and since she does not qualify under the residency requirements of Massachusetts, she is unable to obtain a divorce. While it is true that Pennsylvania cannot grant her a divorce, there is no reason why she cannot seek relief under section 1704, requesting the court to have her marriage declared void.

We enter the following order:

## ORDER

And now, March 15, 2010, on the court's motion to review subject matter jurisdiction of the above-captioned divorce, and after hearing held and review of the applicable law, this court finds that it is without subject matter jurisdiction to grant a divorce or ancillary relief under the Pennsylvania Divorce Code. Accordingly, the above-captioned case is hereby Dismissed.